1

The Honorable David G. Estudillo

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

8

**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

9

INTERNATIONAL PARTNERS FOR
ETHICAL CARE, INC., et al.,

NO. 3:23-cv-05736-DGE

10

Plaintiffs,

DEFENDANTS' MOTION TO
DISMISS

11

12

v.

NOTE ON MOTION CALENDAR:
NOVEMBER 29, 2023 [1]

13

JAY INSLEE, Governor of Washington,
et al.,

14

Defendants.

15

16

17

18

19

20

21

22

23

24

25

—————————

[1] The parties had stipulated to a four-part briefing schedule to account for Plaintiffs' motion for preliminary injunction and Defendants' motion to dismiss. Dkt. #15, #17. Plaintiffs have since notified the Court they are not moving for preliminary injunctive relief at this time. Dkt. #20.

26

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 1

     A.   ESSB 5599 ................................................................................................ 1

     B.   This Lawsuit ............................................................................................. 3

III. ARGUMENT .................................................................................................... 3

     A.   Plaintiffs' Claims Are Non-Justiciable ................................................... 3

          1.   The parents lack standing .................................................................. 3

          2.   IPEC and APC lack associational standing ...................................... 6

          3.   IPEC and APC lack organizational standing .................................... 6

          4.   This case is prudentially unripe ........................................................ 7

     B.   Plaintiffs Fail to State a Claim Under Any Constitutional Theory ........... 8

          1.   Plaintiffs' substantive due process claims fail ................................. 8

               a.   ESSB 5599 does not affect medical-consent laws or strip
                    parents of custody over their children ..................................... 8

               b.   ESSB 5599 does not violate Plaintiffs' substantive
                    due process rights .................................................................. 13

          2.   Plaintiffs' free exercise claim fails ................................................. 15

          3.   Plaintiffs' free speech claims fail ................................................... 16

          4.   Plaintiffs' equal protection claim fails ........................................... 18

          5.   Plaintiffs' procedural due process claim fails ................................. 20

          6.   Plaintiffs' vagueness claim fails ..................................................... 21

     C.   Plaintiffs' state law claims should be dismissed ................................... 22

          1.   *Pennhurst* bars injunctive relief based on state law claims ........... 22

          2.   The Court should decline to exercise supplemental
               jurisdiction over Plaintiffs' state law claims ................................. 23

          3.   Plaintiffs' state law claims fail for the same reasons
               as the federal claims ..................................................................... 23

a.   Due process ........................................................................................ 23

b.   Special privileges and immunities .......................................................... 23

c.   Free speech ........................................................................................ 24

IV.   CONCLUSION ............................................................................................... 24

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023).................................................................................... 5

*Acri v. Varian Assocs., Inc.,*
   114 F.3d 999 (9th Cir. 1997) ...................................................................... 23

*Allen v. Wright,*
   468 U.S. 737 (1984),
   *abrogated on other grounds by*
   *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ...................... 19

*Andersen v. King County,*
   138 P.3d 963 (Wash. 2006) ........................................................................ 24

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................... 3, 8

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1988) ....................................................................... 3

*Boy Scouts of America v. Dale,*
   530 U.S. 640 (2000) ................................................................................ 18

*Brewster v. Bd. Of Educ. Of Lynwood Unified Sch. Dist.,*
   149 F.3d 971 (1998) ................................................................................ 20

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)............................................................................... 3, 5

*Clark v. City of Seattle,*
   899 F.3d 802 (9th Cir. 2018) ....................................................................... 5

*Dep't of Ecology v. Campbell & Gwinn, L.L.C.,*
   43 P.3d 4 (Wash. 2002) ............................................................................ 10

*Diamond v. Charles,*
   476 U.S. 54 (1986).................................................................................. 5

*Dobbs v. Jackson Women's Health Org.,*
   142 S. Ct. 2228 (2022)............................................................................. 14

*E. Bay Sanctuary Covenant v. Biden,*
   993 F.3d 640 (9th Cir. 2021) ....................................................................... 7

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith,*
   494 U.S. 872 (1990) ................................................................................ 16

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*,
    880 F.3d 450, *as amended*,
    881 F.3d 792 (9th Cir. 2018) ............................................................................... 14

*Fields v. Palmdale Sch. Dist.*,
    427 F.3d 1197 (9th Cir. 2005) ........................................................................... 13

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .............................................................................................. 6

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868 (2021) .................................................................................. 15, 16

*Furnace v. Sullivan*,
    705 F.3d 1021 (9th Cir. 2013) ........................................................................... 18

*Grant Cnty. Fire Prot. Dist. No. 5 v. City of Moses Lake*,
    83 P.3d 419 (Wash. 2004) .................................................................................. 24

*Heller v. Doe ex rel. Doe*,
    509 U.S. 312 (1993) ............................................................................................ 14

*Hill v. Colorado*,
    530 U.S. 703 (2000) .............................................................................................. 8

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) .............................................................................................. 5

*Hum. Life of Wash. Inc. v. Brumsickle*,
    624 F.3d 990 (9th Cir. 2010) ............................................................................. 21

*In re Custody of Smith*,
    969 P.2d 21 (Wash. 1998) .................................................................................. 23

*In re PRP of Dyer*,
    20 P.3d 907 (Wash. 2001) .................................................................................. 23

*Jacobs v. Clark Cnty. Sch. Dist.*,
    526 F.3d 419 (9th Cir. 2008) ............................................................................. 16

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
    78 F.4th 622 (4th Cir. 2023) ................................................................................ 5

*L.A. All. for Hum. Rts. v. County of Los Angeles*,
    14 F.4th 947 (9th Cir. 2021) ................................................................................ 6

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ......................................................................... 6, 7

*Laird v. Tatum*,
    408 U.S. 1 (1972) ............................................................................................... 17

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Our Watch With Tim Thompson v. Bonta*,
  No. 2:23-cv-00422-DAD-DB, 2023 WL 4600117 (E.D. Cal. July 18, 2023) ........................ 7

*Parents for Privacy v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ................................................................................. 13, 16

*Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*,
  No. 22-cv-508-SLC, 2023 WL 2139501 (W.D. Wis. Feb. 21, 2023),
  *appeal docketed*, No. 23-1534 (7th Cir. Mar. 21, 2023) ........................................... 5

*Parham v. J.R.*,
  442 U.S. 584 (1979) .................................................................................................. 13

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .................................................................................................... 22

*Planned Parenthood of Cent. Missouri v. Danforth*,
  428 U.S. 52 (1976) .................................................................................................... 13

*R.R. 1900, LLC v. City of Sacramento*,
  604 F. Supp. 3d 968 (E.D. Cal. 2022) ...................................................................... 18

*Rodriguez v. City of San Jose*,
  930 F.3d 1123 (9th Cir. 2019) ..................................................................................... 7

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ..................................................................................... 3

*Schroeder v. Weighall*,
  316 P.3d 482 (Wash. 2014) ...................................................................................... 24

*Smith v. Seibly*,
  431 P.2d 719 (Wash. 1967) ......................................................................................... 9

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2020) ................................................................................. 16

*Stormans, Inc. v. Wiesman*,
  794 F.3d 1064 (9th Cir. 2015) ................................................................................. 16

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) (en banc) ................................................................... 5

*Troxel v. Granville*,
  530 U.S. 57 (2000) .................................................................................................... 20

*U. S. Dep't of Agric. v. Moreno*,
  413 U.S. 528 (1973) ............................................................................................ 19, 20

*United States ex rel. Fitzgerald v. Jordan*,
  747 F.2d 1120 (7th Cir. 1984) ................................................................................. 21

*United States v. David H.*,
   29 F.3d 489 (9th Cir. 1994) ............................................................................. 21

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) .......................................................................... 6

*Vernon v. City of Los Angeles*,
   27 F.3d 1385 (9th Cir. 1994) ............................................................................ 17

*Wash. Food Indus. Ass'n & Maplebear, Inc. v. City of Seattle*,
   524 P.3d 181 (Wash. 2023) ............................................................................... 23

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) .......................................................................................... 8

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) .................................................................................... 13, 14

*Wise v. Inslee*,
   No. 2:21-cv-0288-TOR, 2021 WL 4951571 (E.D. Wash. Oct. 25, 2021) ........... 23

*Wolfson v. Brammer*,
   616 F.3d 1045 (9th Cir. 2010) .......................................................................... 7

## **Constitutional Provisions**

U.S. Const. amend. XI ............................................................................... 22, 23

U.S. Const. art. III .......................................................................................... 1

## **Statutes**

28 U.S.C. § 1367 ............................................................................................. 23

Engrossed Substitute S.B. 5599,
   68th Leg., Reg. Sess. (Wash. 2023), *enacted as*
   2023 Wash. Sess. Laws, ch. 408 ............................................................. passim

Substitute H.B. 1406, 68th Leg., Reg. Sess. (Wash. 2023) ................................ 12

RCW 7.70.065 ................................................................................................. 9

RCW 9.02.100 ................................................................................................. 14

RCW 13.32A.082 ................................................................................... 10, 11, 18

RCW 13.34.050 ................................................................................................ 13

RCW 13.34.060(1) ........................................................................................... 13

RCW 13.50.100(7) ........................................................................................... 11

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

vi

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

RCW 26.28.010 ....................................................................................................... 9

RCW 71.34.500 ............................................................................................... 10, 14

RCW 71.34.530 ................................................................................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 3

**Other Authorities**

H.B. Rep. on Engrossed Substitute S.B. 5599,
  68th Leg., Reg. Sess. (April 12, 2023) ........................................................... 15

House Floor Debate on Engrossed Sustitute S.B. 5599,
  68th Leg., Reg. Sess. (Apr. 23, 2013), *video recording by* TVW,
  https://tvw.org/video/house-floor-debate-april-12-2023041141/
  ?eventID=2023041141 ...................................................................................... 2

Kinzi Sparks,
  *National Estimate of LGBTQ Youth Seriously Considering Suicide*,
  THE TREVOR PROJECT (June 27, 2019), https://www.thetrevorproject.org
  /blog/national-estimate-of-lgbtq-youth-seriously-considering-suicide/ ............... 15

Senate Human Services Public Hearing on Engrossed Substitute S.B. 5599,
  68th Leg., Reg. Sess. (Feb. 6, 2023), *video recording by* TVW,
  https://tvw.org/video/senate-human-services-2023021142/?eventID=2023021142 .............. 2

The Trevor Project,
  *Homelessness and Housing Instability Among LGBTQ Youth*,
  https://www.thetrevorproject.org/wp-content/uploads/2022/02/
  Trevor-Project-Homelessness-Report.pdf ............................................................ 2

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

vii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# I.    INTRODUCTION

Engrossed Substitute Senate Bill 5599 is a modest step to address the crisis of trans youth homelessness by giving Washington's Department of Children, Youth, and Families (DCYF) an opportunity to provide additional services to trans youth before they disappear from shelters to the streets. It accomplishes this by providing that when a youth runaway shows up at a licensed shelter, the shelter does not directly notify the youth's parents of their presence in the shelter if the youth is seeking gender-affirming care. Instead, the shelter must notify DCYF, who in turn must notify the youth's parents, offer to make referrals to behavioral health services, and offer services to help reunify the youth with their family.

Plaintiffs' challenge to ESSB 5599 fundamentally misconstrues the law in service of their goal to prohibit gender-affirming health care for trans youth. But this law does not change standards of care or medical-consent standards for minors (or anyone else), making Plaintiffs challenge to ESSB 5599 misguided. This Court should dismiss the Complaint because Plaintiffs lack article III standing; none alleges their children are seeking gender-affirming care and have run away or that they have been affected by ESSB 5599's modified notification requirements. And on the merits, ESSB 5599 simply does not do most of the things Plaintiffs say it does. ESSB 5599 does not prevent parents from being notified when their children show up at a shelter. It does not permit DCYF to take custody of trans youth, nor otherwise permit DCYF to interfere with any parent's custody. It does not require parents to refer to their children in a particular way, nor affect their rights to raise their children in accordance with their faiths. In short, Plaintiffs' principal allegations are wrong as a matter of law, and the Court should dismiss their lawsuit.

# II.    BACKGROUND

## A.    ESSB 5599

Unaccompanied youth homelessness poses serious threats to youth health and safety. As reflected in the legislative history of ESSB 5599, LGBTQ+ youth are at greater risk of

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  experiencing some form of homelessness compared to their heterosexual or cisgender peers, and

2  report experiencing higher rates of abuse and mental health issues.[2] Washington's Legislature

3  passed ESSB 5599 to address the health and safety risks to trans or pregnant youth experiencing

4  homelessness. Engrossed Substitute S.B. 5599, at §1, 68th Leg., Reg. Sess. (Wash. 2023),

5  *enacted as* 2023 Wash. Sess. Laws, ch. 408. Finding "that barriers to accessing shelter can place

6  a chilling effect on exiting unsheltered homelessness and therefore create additional risk and

7  dangers for youth," ESSB 5599 "remove[s] barriers to accessing temporary, licensed shelter

8  accommodations for youth seeking certain protected health care services." *Id.* Prior to

9  ESSB 5599, shelters generally had to contact parents within 72 hours of the youth's arrival unless

10 there were compelling circumstances not to—such as circumstances indicating that notifying the

11 parent would subject the minor to abuse or neglect. Fear of this notification caused some trans

12 youth to leave the safety of shelters or avoid them altogether.[3] To ensure trans youth have a safe

13 place to stay, ESSB 5599 provides that when a youth seeking protected health care services,

14 including gender-affirming care or reproductive health services, arrives at a licensed shelter or

15 homeless youth program, the shelter should contact DCYF rather than contacting the youth's

16 parents directly. *Id.*, §2. Upon receipt of information from a shelter about a youth, DCYF notifies

17 parents about the youth, offers to make referrals for behavioral health services, and offers

18 reconciliation services to the youth and their parents to help reunify the family. *Id.* ESSB 5599

19 gives DCYF an opportunity to connect vulnerable youth and their families to additional services.

---

[2] *See* Senate Human Services Public Hearing on ESSB 5599 (Feb. 6, 2023), at 1:19:15-1:19:40, *video recording by* TVW, https://tvw.org/video/senate-human-services-2023021142/?eventID=2023021142 (testimony noting LGBTQ+ youth account for at least 40% youth experiencing homelessness in King County); *see also* The Trevor Project, *Homelessness and Housing Instability Among LGBTQ Youth*, https://www.thetrevorproject.org/wp-content/uploads/2022/02/Trevor-Project-Homelessness-Report.pdf (35% to 39% of trans or nonbinary youth have experienced housing instability).

[3] *See* House Floor Debate on ESSB 5599 (Apr. 23, 2013), at 2:32:07-2:33:45, *video recording by* TVW, https://tvw.org/video/house-floor-debate-april-12-2023041141/?eventID=2023041141 (remarks of Representative Julio Cortes).

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**B.      This Lawsuit**

Plaintiffs—four sets of parents and two organizations who oppose gender-affirming care—challenge ESSB 5599 on a facial basis. Dkt. #1 (Compl.) ¶¶8-20, 193-200. None of the parents allege that ESSB 5599 applies to them—i.e., they have a trans youth who has run away and sought gender-affirming care—nor do the organizations allege it applies to any of their members. Nonetheless, they allege a raft of facial constitutional violations, based on ways ESSB 5599 supposedly interferes with their rights to parent their children. Compl. ¶¶98-192.

### III.      ARGUMENT

Under Rule 12(b)(1), a complaint must be dismissed if its allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Under Rule 12(b)(6), "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rule 12(b)(6) dismissal may be based either on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

**A.      Plaintiffs' Claims Are Non-Justiciable**

**1.      The parents lack standing**

To have standing, "an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). This case should begin and end with standing. The plaintiff parents do not allege any injury; their Complaint reflects only a policy disagreement with ESSB 5599. Their bare disagreement with the law is not enough to confer standing.

The parents base their purported injuries on their belief that ESSB 5599 "allows shelters and homes to keep children at locations without their parents' knowledge and refer those children for health interventions without their parents' knowledge or approval." Compl. ¶6. This

1    interpretation of the statute is wrong (as set out below), but even so, their speculative injury

2    requires a lengthy causal chain not met here. Specifically that their child (1) have a gender

3    identity that is different from their biological sex; (2) be seeking gender-affirming care; (3) run

4    away from home; (4) seek refuge with a licensed homeless shelter or organization; (5) decline

5    to share parental information with and receive reconciliation services from DCYF; and (6) obtain

6    gender-affirming care from a provider without parental consent. For Parents 4A and 4B, their

7    allegations end before the first event in this chain. They do not allege their two children are

8    transgender. Compl. ¶¶18-19. For Parents 1A, 1B, 2A, 2B, 3A, and 3B, their allegations end

9    before the second event in the chain. Instead, Parents 2A and 2B assert their 18-year-old, 2C, is

10   ready to provide child 2D transportation to "an environment that would provide gender

11   affirmation." Compl. ¶92. Parents 3A and 3B allege that adults have offered 3C access to an

12   affirming home. Compl. ¶¶94-95. Parents 1A and 1B assert their child, 1C, may "run away from

13   home" after again socially transitioning. Compl. ¶12. To be clear, no parent alleges their children

14   are receiving protected health care. None alleges their children have run away to a licensed

15   organization with the mission to provide services to homeless or runaway youth. As such, none

16   has alleged that DCYF has not disclosed information about their children's presence at a

17   homeless shelter. And no parent alleges their children are receiving protected health care.

18   Further, even if their children were receiving protected healthcare services, ESSB 5599 does

19   nothing to change the standards of care and consent standards that apply to healthcare

20   professionals offering gender-affirming care.

21        In short, the parents cannot show ESSB 5599 will actually or imminently injure them;

22   they only argue in the abstract that ESSB 5599 *might* apply to their children at some point in the

23   future. Put another way, "Plaintiff[s'] entire standing argument is premised on a speculative

24   chain of possibilities, including future choices made by individuals who have not yet been

25   identified, indeed who *cannot* yet be identified because they have *not* acted, and they might *never*

26   act." *Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*, No. 22-cv-508-SLC,

2023 WL 2139501, at \*7 (W.D. Wis. Feb. 21, 2023), *appeal docketed*, No. 23-1534 (7th Cir. Mar. 21, 2023); *see John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 631 (4th Cir. 2023) (parents lacked standing to challenge school district's gender identity guidelines based on attenuated future harm); *Clapper*, 568 U.S. at 413-14 (declining to confer standing based on a "speculative chain of possibilities" that "require[d] guesswork as to how independent decisionmakers will exercise their judgment[]"). The parents' speculative allegations are insufficient to confer standing.

Plaintiffs try to avoid this problem by claiming pre-enforcement standing. Compl. ¶¶82-90. To bring a pre-enforcement challenge, plaintiffs must show "'a *genuine* threat of *imminent* prosecution.'" *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018) (citation omitted); *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). But under ESSB 5599, there is nothing that could be prosecuted against the parents. For instance, there are no statutory obligations placed on parents that they could violate or proceedings that could be threatened (or disavowed) against them. Nor are the Attorney General's actions in signing an amicus brief or opening an inquiry to look into employment practices under other laws equivalent to enforcement under the *challenged* statute. *Compare* Compl. ¶¶86-90, *with 303 Creative LLC v. Elenis*, 600 U.S. 570, 582 (2023) (looking to enforcement history under the challenged law). The parents therefore lack standing for a pre-enforcement challenge.

In sum, the parents' injury amounts only to a bitter disagreement with ESSB 5599. Because the existence of a statute contrary to the parents' policy preferences is not enough to establish standing, this Court should dismiss their suit. *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) ("The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986))); *Diamond*, 476 U.S. at 62 (article III "is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests[]'" (citation omitted)).

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

### 2.    IPEC and APC lack associational standing

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Like the individual parents, neither IPEC nor APC has alleged injuries sufficient for standing. IPEC, whose mission "is to stop the unethical treatment of children . . . under the banner of gender identity affirmation," has "approximately two dozen parents" as members based in Washington, including at least one member with a transgender child. Compl. ¶8. APC, "dedicated to fighting the gender industry," does not describe its members at all. Compl. ¶9. And the Complaint does not identify any members who have suffered—or are imminently likely to suffer—harm purportedly caused by ESSB 5599. Because IPEC and APC have not shown that their "members would otherwise have standing to sue in their own right," they lack associational standing. *L.A. All. for Hum. Rts. v. County of Los Angeles*, 14 F.4th 947, 959-60 (9th Cir. 2021).

### 3.    IPEC and APC lack organizational standing

An organization has standing on its own behalf if it can show: (1) that the defendant's actions have frustrated its mission; and (2) that it has spent resources counteracting that frustration. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013). An organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

IPEC and APC have not met the requirements for organizational standing because they have not alleged any actual injury—in the form of a real-world impediment to their activities—caused by ESSB 5599. In particular, the Complaint contains no allegations the law has caused them to divert resources and suffer "some other injury if [they] had not diverted resources to

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

counteracting the problem." *Id.* Courts routinely deny organizational standing where, as here, the challenged policy does not concretely impede the organization's activities. *Compare Our Watch With Tim Thompson v. Bonta*, No. 2:23-cv-00422-DAD-DB, 2023 WL 4600117, at *6 (E.D. Cal. July 18, 2023) (complaint "devoid of any allegations pertaining to what plaintiff's regular activities are and how [the law]'s enactment specifically impacts the organization's functions[ ]"); *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1136 (9th Cir. 2019) (gun rights organizations lacked standing because they "offered no theory explaining their organizational harm"); *with E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663-64 (9th Cir. 2021) (legal services organizations had organizational standing because challenged rule made majority of their prospective clients ineligible for asylum and detained those eligible for asylum at ports of entry hundreds of miles away from their offices).

Because IPEC and APC have not described how their activities, functions, or funding have been hampered by ESSB 5599 nor what actions they have had to take in response to the legislation, they lack organizational standing to challenge ESSB 5599.

### 4. This case is prudentially unripe

The Court should also decline to exercise jurisdiction because Plaintiffs cannot establish prudential ripeness. To determine whether a case is prudentially ripe, courts consider (1) whether the issues are fit for judicial resolution and (2) the potential hardship to the parties if judicial resolution is postponed. *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010); *id.* at 1064 (finding certain claims were not ripe because they rested upon contingent future events that might not occur as anticipated, if at all). Neither prong is met here. First, Plaintiffs' claims depend entirely on how the law *might* be applied to the anonymous parents' children in the event that their children eventually choose to run away to a licensed shelter in order to seek gender-affirming care, and they offer no basis to predict whether this will actually happen other than pure speculation. Second, Plaintiffs have not shown how withholding review would result in direct and immediate

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    hardship to them. Because Plaintiffs' case is based on speculative assertions that may never

2    happen, the Court should find the case is not ripe and decline to exercise jurisdiction.

3    **B.      Plaintiffs Fail to State a Claim Under Any Constitutional Theory**

4             Even if jurisdiction exists, Plaintiffs' facial claims fail as a matter of law. To state a

5    cognizable facial challenge, Plaintiffs must plausibly allege "that no set of circumstances exists

6    under which [ESSB 5599] would be valid, i.e., that the law is unconstitutional in all of its

7    applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)

8    (cleaned up). For vagueness claims, uncertainty at a statute's margins will not warrant facial

9    invalidation if it is clear what the statute proscribes "in the vast majority of its intended

10   applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (citation omitted). Plaintiffs come

11   nowhere near meeting this burden. Rather, their claims are based on false and wildly implausible

12   allegations about what ESSB 5599 does. But ESSB 5599 does not change laws involving consent

13   to medical procedures, does not permit DCYF to abstain from attempting to contact parents, does

14   not strip parents of custody over their children, does not force parents to call their children by

15   pronouns aligning with their children's gender identity, or do any of the other things Plaintiffs

16   allege. And because ESSB 5599 does not interfere with *any* of Plaintiffs' fundamental rights,

17   their claims are subject to rational basis review—a standard ESSB 5599 easily meets.

18            **1.      Plaintiffs' substantive due process claims fail**

19                     **a.      ESSB 5599 does not affect medical-consent laws or strip parents of
                                 custody over their children**

20            Plaintiffs allege two substantive due process claims: ESSB 5599 interferes with their

21   right to (1) direct their children's upbringing, and (2) have custody of their children. Both should

22   be rejected, as both rest on legally untenable mischaracterizations of ESSB 5599. *Iqbal*, 556 U.S.

23   at 678 ("[Courts] are not bound to accept as true a legal conclusion couched as a factual

24   allegation[.]" (cleaned up)).

25

26

*First*, Plaintiffs' upbringing claim is based on the allegation that "by giving [DCYF] authority to make referrals, without notice to or consultation with parents, for 'appropriate behavioral health services' for a child seeking gender-affirming care," ESSB 5599 "authoriz[es] the child to engage in 'treatment' not authorized by the parent," and "authoriz[es] the State to provide such treatment." Compl. ¶¶103-104. Plaintiffs go so far as to assert "SB 5599 allows [DCYF] to . . . authorize potentially life-altering (and even sterilizing) 'gender-affirming' treatment . . . for minors." Compl. ¶62.

But ESSB 5599 has absolutely no effect—*none*—on Washington's medical-consent laws, including what treatments may be provided to youth with and without parental consent. With some exceptions, the age of majority for health care is 18.[4] RCW 26.28.010. For minors who are homeless and not authorized to provide consent, consent to certain medical care "may be obtained from a school nurse, school counselor, or homeless student liaison," but only when "[t]he minor patient is not under the supervision or control of a parent, custodian, or legal guardian, and is not in the care and custody of the department of social and health services." RCW 7.70.065(2)(b)(i). And an "unaccompanied homeless youth"—i.e., "a youth experiencing homelessness while not in the physical custody of a parent or guardian"—who is unable to obtain informed consent from a school nurse, counselor, or homeless student liaison can consent to "nonemergency, outpatient, primary care services," such as physical, vision and dental exams or immunizations. RCW 7.70.065(3). These laws are entirely unaffected by ESSB 5599, as a straightforward reading of the statute shows. Nothing in ESSB 5599 grants DCYF any ability to authorize providing puberty blockers, hormone therapy, or surgical care to youth.

For mental health services, the age of consent remains 13 years old—just as it has been since at least 1985—with parental notification requirements differing based on whether the

---

[4] For instance, under the "mature minor doctrine," minors can give valid consent to medical care if the provider determines, based on an evaluation of the minor's "age, intelligence, maturity, training, experience, economic independence or lack thereof, general conduct as an adult and freedom from the control of parents," that they can understand and appreciate the consequences of a given procedure. *Smith v. Seibly*, 431 P.2d 719, 723 (Wash. 1967). ESSB 5599 does not invade the role of the medical provider in applying the mature minor doctrine.

1  treatment is inpatient or outpatient. RCW 71.34.500; .530. Again, nothing in ESSB 5599

2  modifies Washington's consent requirements. It merely requires DCYF to offer certain services

3  to youths and their families.

4      *Second*, Plaintiffs' custody claim turns on their assertion that ESSB 5599 "den[ies] to

5  parents . . . information about the location of their children, as well as the custody and control of

6  their children." Compl. ¶109. Again, these assertions are unmoored from what the law actually

7  does. ESSB 5599 does not change the law about information DCYF provides to parents.

8  RCW 13.32A.082(3) states:

> (3)(a) When [DCYF] receives a report under subsection (1) of this section [from
> a shelter or organization], it shall make a good faith attempt to notify the parent
> that a report has been received and offer services to the youth and the family
> designed to resolve the conflict, including offering family reconciliation services,
> and accomplish a reunification of the family. [DCYF] shall offer services under
> this subsection as soon as possible, but no later than three days, excluding
> weekends and holidays, following the receipt of a report under subsection (1) of
> this section.
>
> (b) When [DCYF] receives a report under subsection (1) of this section for a
> minor who is seeking or receiving protected health care services, it shall:
>
> > (i) Offer to make referrals on behalf of the minor for appropriate behavioral
> > health services; and
> >
> > (ii) Offer services designed to resolve the conflict and accomplish a
> > reunification of the family.

18      Section (3)(a) straightforwardly requires DCYF to make a good faith attempt to notify

19  parents *whenever* it receives a report of a runaway youth (i.e., "a report under subsection (1) of

20  this section"). This was the law before ESSB 5599, and it remains so after. Plaintiffs disagree,

21  but their tendentious reading of the statute—relying on isolated statements of individual

22  legislators and inapplicable canons of statutory interpretation (Compl. ¶¶45-48)—cannot

23  overcome the plain text of the statute. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 43 P.3d

24  4, 9-10 (Wash. 2002) ("[I]f the statute's meaning is plain on its face, then the court must give

25  effect to that plain meaning as an expression of legislative intent.").

26

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Moreover, as Plaintiffs admit, their reading of the statute is contrary to DCYF's own understanding and the policy guidance DCYF has given its employees. Compl. ¶¶50-53 (discussing DCYF Policy Memo: Changes to 3100 (July 21, 2023) ("Policy Memo")). DCYF's Policy Memo requires DCYF employees to "[m]ake a good faith attempt to contact the youth's parent or legal guardian to offer F[amily]R[eunification]S[ervices] to resolve the conflict and accomplish a reunification of the family," and to "[d]ocument" the steps they took to do so. Policy Memo (Sepe Decl., Ex. D). The Policy Memo directs DCYF employees to "[c]ontact the parents or legal guardians as outlined in the current FRS policy." Compl. ¶53. That policy provides further direction on what DCYF employees "must" do, including that "[c]aseworkers must . . . [c]ontact the family within twenty-four hours of being assigned the case, excluding weekends and holidays, to schedule an interview and assessment." DCYF Policy 3100 (Sepe Decl., Ex. E).

The unambiguous notice requirement of ESSB 5599 is buttressed by other notice requirements throughout RCW 13.32A.082 and related laws. For example, Section 3(b) specifically requires that when a runaway youth is seeking gender-affirming care, DCYF must "[o]ffer services designed to . . . accomplish a reunification of the family," something that would require DCYF to attempt to notify the minor's parents. Moreover, Section 1(b)(ii) of RCW 13.32A.082 continues to require shelters to check the Washington State Patrol's database of missing children reports "[a]t least once every eight hours," and to notify DCYF "immediately" if a minor in shelter has been reported missing—regardless of whether that minor is seeking gender-affirming care. Further, under RCW 13.50.100(7)(a), DCYF may only withhold information about a minor's whereabouts and condition if the agency determines "that release of this information is likely to cause severe psychological or physical harm to the juvenile."[5] *Contra* Compl. ¶59. Thus, far from undermining parents' rights to receive

---

[5] RCW 13.50.100(7)(b) additionally provides that DCYF can withhold "information . . . obtained . . . in connection with the provision of counseling, psychological, psychiatric, or medical services to the juvenile," when "the juvenile has a legal right to receive those services without the consent of any person or agency." In other words,

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  information about their children, ESSB 5599 merely changes who notifies the parents—DCYF

2  as opposed to a shelter—which gives DCYF an opportunity to offer services to vulnerable

3  transgender youths and their families to begin a reunification process before those youths can

4  disappear back onto the streets.

5      Plaintiffs' back-up argument that ESSB 5599 "changes the timing of the notice to parents

6  in a way that substantially impairs parental rights" fares no better. Compl. ¶ 55. Though

7  Plaintiffs' do not challenge Substitute House Bill 1406, their allegation is aimed at language

8  added by that bill, which provides that DCYF "shall offer [family reunification] services . . . as

9  soon as possible, but no later than three days, excluding weekends and holidays, following the

10  receipt of a report" from a shelter. SHB 1406, § 2(3); Compl. ¶ 56. Prior to the passage of

11  SHB 1406, there was *no* statutory deadline for providing family reunification services. But, as

12  noted above, Policy 3100 requires DCYF caseworkers to contact the minor's family "to schedule

13  an interview and assessment" "within twenty-four hours of being assigned the case, excluding

14  weekends and holidays." In light of this policy, the statutory change via SHB 1406 is a backstop,

15  providing further assurance that families will receive services as quickly as possible. In other

16  words, this provision adds a statutory requirement that services be provided within 72 hours.

17      Finally, Plaintiffs are also incorrect that ESSB 5599 "den[ies] to parents . . . custody and

18  control of their children." Compl. ¶ 109. Nothing in ESSB 5599 authorizes DCYF to take custody

19  of a minor, with or without a parent's consent, simply because the minor seeks gender-affirming

20  care. *See generally* ESSB 5599. Plaintiffs seem to suggest that DCYF takes custody of a minor

21  whenever a shelter reports the minor's presence to DCYF. *See e.g.*, Compl. ¶ 63 (alleging that

22  "nothing in [ESSB 5599] requires the Department to return the child"). But that is not the case.

23  Rather, DCYF may generally only take custody of a minor where a court finds "that there are

24  reasonable grounds to believe that removal is necessary to prevent imminent physical harm to

25  _____

26  youths do not waive their rights to provider-patient confidentiality merely because they receive services through
DCYF.

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE                    12                    ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

the child due to child abuse or neglect." RCW 13.34.050; *see* RCW 13.34.060(1) (setting 72-hour period minor may be taken into custody under RCW 13.34.050 without further court order). Just because DCYF receives a report about a minor does not mean that a parent's custodial rights are somehow impeded. A parent remains free to pick up their child from a shelter or youth to return home, and, absent a court order, DCYF has no basis to interfere.

In short, *none* of Plaintiffs' weight-bearing allegations are true. Their substantive due process claims fail to state a claim upon which relief can be granted.

> **b.  ESSB 5599 does not violate Plaintiffs' substantive due process rights**

Stripping away Plaintiffs' false characterizations, the actual law passed by the Legislature plainly complies with due process. ESSB 5599 simply directs shelters to report to DCYF when youths are seeking protected health care and requires DCYF to offer services to youths and their families (which they can accept or reject). This modest effort to make services available to trans youths does not unduly interfere with any parent's right to parent their children.

To start, ESSB 5599 does not implicate any of Plaintiffs' fundamental rights as parents, and so rational basis review, not strict scrutiny, applies. *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997). "As with all constitutional rights, the right of parents to make decisions concerning the care, custody, and control of their children is not without limitations." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005); *see also Parents for Privacy v. Barr*, 949 F.3d 1210, 1231 (9th Cir. 2020) (holding that parents did not have a fundamental right to prevent trans kids from sharing school bathrooms and locker rooms with cis children). In particular, "a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized." *Parham v. J.R.*, 442 U.S. 584, 603 (1979). And of course, "[m]inors, as well as adults, are protected by the Constitution and possess constitutional rights[,]" including the right to seek appropriate healthcare. *Planned Parenthood of Cent. Missouri v. Danforth*, 428 U.S. 52, 74 (1976). When it comes to the protected health care services specifically at issue here, Washington has long recognized the right of youths to

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  seek reproductive and behavioral health treatment without their parent's consent. *See*

2  RCW 9.02.100 (access to birth control and abortion care); RCW 71.34.500 (access to mental

3  health and substance abuse treatment).

4        Against this background, Plaintiffs cannot identify any specific right "deeply rooted in

5  our history and tradition and . . . essential to our Nation's scheme of ordered liberty" that

6  ESSB 5599 allegedly impinges. *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246,

7  (2022) (cleaned up); *see also Glucksberg*, 521 U.S. at 720-21 ("[W]e have required in

8  substantive-due-process cases a careful description of the asserted fundamental liberty interest"

9  "lest the liberty protected by the Due Process Clause be subtly transformed into the policy

10  preferences of the Members of this Court." (cleaned up)). None of Plaintiffs' allegations about

11  what ESSB 5599 does, and how it allegedly implicates their rights as parents, suffice to meet

12  this high burden because they are based on mischaracterizations of the statute. And Plaintiffs do

13  not argue (and would be unsuccessful if they tried to argue) that any of the *actual* provisions of

14  ESSB 5599 infringes on any deeply-rooted right; that, for example, there is a fundamental right

15  to be told of their children's whereabouts directly by a shelter employee, as opposed to by a

16  DCYF employee; or that there is a fundamental right to block their children from receiving

17  optional referrals for behavioral health services, when Washington has, for nearly forty years,

18  permitted minors to consent to such services; or that there is a fundamental right not to receive

19  referrals for *optional* family reunification services.

20        Accordingly, ESSB 5599 is subject to rational basis review, and it easily satisfies this

21  "highly deferential" standard. *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*,

22  880 F.3d 450, 457, *as amended*, 881 F.3d 792 (9th Cir. 2018) ("Rational basis review is highly

23  deferential to the government, allowing any conceivable rational basis to suffice."); *Heller v.*

24  *Doe ex rel. Doe*, 509 U.S. 312, 320 (1993) (under rational basis review, "[a] statute is presumed

25  constitutional, and the burden is on the one attacking the legislative arrangement to negat[e]

26  every conceivable basis which might support it" (cleaned up)).

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Further, the Legislature set out ESSB 5599's purpose after finding that "[y]outh seeking certain medical services"—i.e., gender-affirming and/or reproductive care—"are especially at risk and vulnerable" and "[h]omelessness amongst transgender youth can further endanger an already at-risk population." ESSB 5599, §1.

Addressing this problem is plainly a legitimate government interest. And ESSB 5599 does that by giving DCYF an opportunity to connect with these particularly vulnerable minors, refer them to behavioral health services, and work to reunify families—before youth may slip back onto the streets. ESSB 5599 provides "a safe opportunity and possibility for young people to connect with medical and mental health care providers who provide a standard of care and treatment that has been found safe and effective by every major medical body, including the American Academy of Pediatrics and the American Medical Association." H.B. Rep. on ESSB 5599, at 5 (April 12, 2023) (Sepe Decl., Ex. C). Access to these services can be life changing for youth—LQBTQ youth are four times more likely to attempt suicide than their cis-gender, heterosexual peers. Kinzi Sparks, *National Estimate of LGBTQ Youth Seriously Considering Suicide*, THE TREVOR PROJECT (June 27, 2019), https://www.thetrevorproject.org/blog/national-estimate-of-lgbtq-youth-seriously-considering-suicide/. Indeed, "one in three transgender youth report attempting suicide." ESSB 5599, §1. Providing greater access to appropriate behavioral health services, while working to reunify families, is undoubtedly a rational policy response. Plaintiffs' due process claims should therefore be dismissed.

### 2. Plaintiffs' free exercise claim fails

Plaintiffs also claim ESSB 5599 violates their right to the free exercise of religion under the First Amendment because it "violat[es] Plaintiffs' right to raise their children according to the parents' faith." Compl. ¶125. ESSB 5599 does no such thing.

To state a claim under the free exercise clause, a plaintiff must show that a government action has burdened the exercise of a sincerely held religious belief. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021). Whether a plaintiff states a viable free exercise claim depends on the

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  level of scrutiny to be employed by the court. *See Emp. Div., Dep't of Hum. Res. of Or. v. Smith*,

2  494 U.S. 872 (1990). Neutral laws of general applicability that only incidentally burden religion are

3  not subject to strict scrutiny; instead, they receive rational basis review. *Fulton*, 141 S. Ct. at 1876.

4          Here, Plaintiffs appear to concede ESSB 5599 is a neutral law of general applicability, *see*

5  Compl. ¶ 120, but nevertheless argue strict scrutiny should still apply because ESSB 5599 involves

6  "other constitutional protections, such as parental rights." *Id.* Plaintiffs' argument lacks merit. First,

7  it is unclear whether such a "hybrid" constitutional rights claim even exists. *See Parents for Privacy*,

8  949 F.3d at 1237-38 (doubting whether hybrid rights claim exists and whether strict scrutiny would

9  be required if it does); *see also Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th

10  Cir. 2008) (describing widespread criticism of the hybrid rights theory). Second, even if a hybrid

11  rights claim did exist, ESSB 5599 does not infringe on parental rights or implicate any other

12  constitutional protection at all. Alleging multiple failing constitutional claims cannot be enough to

13  invoke a hybrid rights claim and trigger strict scrutiny. *See Parents for Privacy*, 949 F.3d at 1237-

14  38 (rejecting plaintiffs' hybrid rights challenge to a school district's neutral and generally applicable

15  policy of allowing transgender students to use the bathroom that matched their gender identity).

16          Instead, as a neutral and generally applicable law, ESSB 5599 need only survive rational-

17  basis review, i.e., it must be rationally related to a legitimate governmental purpose. *See Stormans,*

18  *Inc. v. Selecky*, 586 F.3d 1109, 1127-28 (9th Cir. 2020); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064,

19  1084 (9th Cir. 2015). As explained above, Plaintiffs' allegations fail to meet that burden.

20  ESSB 5599's provision of temporary shelter for youth seeking protected health care services is

21  rationally related to the legitimate purpose of protecting the health and safety of homeless youth.

22  *Cf. Parents for Privacy*, 949 F.3d at 1238 (concluding that "protecting student safety and well-

23  being" is a legitimate governmental purpose). Plaintiffs' free exercise claim must be dismissed.

24          **3.     Plaintiffs' free speech claims fail**

25          Plaintiffs next rely on a contrived interpretation of ESSB 5599 to argue that the law both

26  chills and compels speech in violation of the First Amendment. ESSB 5599 does neither.

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

As an initial matter, ESSB 5599 plainly does not chill parents from using their child's birth name or telling their children that they are the sex they were assigned at birth, let alone penalize parents for doing so. *Contra* Compl. ¶¶ 130, 137. As discussed above, ESSB 5599 does not regulate parents or their relationship with their children at all. ESSB 5599 only changes *DCYF's* obligations—in other words, DCYF must now provide behavioral health referrals and notify parents when a shelter reports a minor seeking protected health services. Plaintiffs suggest that ESSB 5599 nevertheless chills parents' free speech even if ESSB 5599 "fall[s] short of a direct prohibition." *Id.* But a government action that is not a direct prohibition must still be regulatory, proscriptive, or compulsory in nature to implicate the First Amendment. *See Vernon v. City of Los Angeles*, 27 F.3d 1385 (9th Cir. 1994); *Laird v. Tatum*, 408 U.S. 1, 11 (1972) (concluding an alleged chilling effect cannot "arise merely from the individual's knowledge that a governmental agency was engaged in certain activities"). ESSB 5599 does not fall within any of these categories. It does not restrict, regulate, or interfere with parents' views on sex or gender identity, nor does it punish or correct parents in any way if they continue to use their child's birth name or pronouns for the sex assigned at birth. Of course, parents might choose not to use their child's birth name or discuss their views on gender identity or engage in "speech that their child . . . may disagree with" to minimize familial conflict, *see* Compl. ¶ 187, but that decision is not traceable to anything contained in ESSB 5599.

To the extent Plaintiffs argue ESSB 5599 "create[s] a legal environment" where a child can "run away and get the state to provide what the child desires," that is flatly wrong. Compl. ¶ 189. Again, regardless of whether a child has run away, ESSB 5599 does not change the laws establishing how or whether a minor is able to access medical care and, as discussed above, ESSB 5599 has no effect *whatsoever* on parents' custody of their children.

Finally, ESSB 5599 does not compel any speech. *Contra* Compl. ¶¶ 134, 138. Nothing in ESSB 5599's plain text suggests that DCYF will require the parents to *say* or *do* anything to reunify with their children, let alone that they use pronouns aligning with their child's gender identity or accept gender-affirming care for their child. *Cf. Boy Scouts of America v. Dale*, 530 U.S. 640, 642

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  (2000) (concluding First Amendment is violated when state law would require Boy Scouts to accept

2  an openly gay member). Section 2 of ESSB 5599, which requires DCYF to "offer services designed

3  to resolve the conflict and accomplish a reunification of the family," simply duplicates what the

4  Department does when it receives a report about a youth receiving services at a shelter. *Compare*

5  ESSB 5599, §2; *with* RCW 13.32A.082(3) (both directing DCYF to "offer services designed to

6  resolve the conflict and accomplish a reunification of the family"). Because ESSB 5599 does not

7  require the parent to accept the offer of reunification services for their child to return home, there

8  can be no claim that ESSB 5599 compels parents to say any "preferred" message.

9       **4.    Plaintiffs' equal protection claim fails**

10       Plaintiffs' equal protection claim fails as a matter of law because ESSB 5599 does not

11  classify Plaintiffs in any respect. And even if it did, because Plaintiffs' fundamental rights are

12  not implicated, the statute is subject to rational basis review, which it easily passes. The first step

13  in determining whether an equal protection violation has occurred, is "identify[ing] the relevant

14  class to which [the plaintiff] belong[s]." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th

15  Cir. 2013). Then it can be determined whether there was discrimination based on that class. *Id.*

16       Here, Plaintiffs allege that ESSB 5599 "treats parents of children seeking or receiving

17  'gender-affirming' treatment categorically differently from other parents," and singles them out

18  for different treatment when their children run away. Compl. ¶147. But Plaintiffs fail to allege

19  how they are part of the class that they claim ESSB 5599 implicates: parents of children who run

20  away from home and seek gender-affirming care. *First*, no parent alleges their child has run

21  away. *See* Compl. ¶¶8-20. *Second*, although two sets of parents allege their children identify as

22  trans, and a third alleges their child used to, no parent alleges their child is actually seeking or

23  receiving protected health care services within the meaning of ESSB 5599. *Id.* Because they are

24  not part of the class allegedly subject to discrimination, Plaintiffs' claim fails out of the gate.

25  *See, e.g.*, *R.R. 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 977 (E.D. Cal. 2022);

26  *Allen v. Wright*, 468 U.S. 737, 755 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v.*

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Static Control Components, Inc.*, 572 U.S. 118 (2014) (holding that discrimination "accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct" (citation omitted)).[6]

Even as to those parents actually affected by ESSB 5599, Plaintiffs cannot plausibly argue they are treated materially differently than parents of other runaway youth. In both circumstances, the parents are notified. The only difference for parents of youth seeking protected health care services is that the shelter first notifies DCYF—who then contacts the parents—instead of the shelter contacting the parents directly.

Finally, even if Plaintiffs were part of the class they claim is implicated by ESSB 5599, and even if they could show they were treated differently than other parents in a material way, their claim still fails because, as detailed above, ESSB 5599 easily passes rational basis review. *See supra* pp.14-15. As with their substantive due process claims, Plaintiffs assert that strict scrutiny applies because ESSB 5599 interferes with their fundamental rights as parents. Compl. ¶¶147-48. But as with their substantive due process claims, they are incorrect. ESSB 5599 does not implicate any parents' fundamental rights to care for their child, and therefore need not satisfy strict scrutiny.

Plaintiffs argue that the State cannot satisfy rational basis review because ESSB 5599 was, they contend, designed to "punish[] parents who are not fully onboard with so-called 'gender-affirming treatment.'" Compl. ¶150 (citing *U. S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534-35 (1973)). But the legislation itself, and the case they cite, conclusively undermine Plaintiffs' argument.

---

[6] Plaintiffs' Equal Protection claim—like Plaintiffs' other claims—mischaracterizes ESSB 5599. Plaintiffs assert the statute provides "that if a child claims to be seeking 'gender-affirming' treatment—*and only for that reason*—then 'compelling reasons' under Washington law are per se established." Compl. ¶146 (emphasis added). In truth, ESSB 5599 adds "protected health care services" to a definition of "compelling reasons" that already included "[c]ircumstances that indicate that notifying the parent or legal guardian will subject the minor to abuse or neglect." ESSB 5599, §2. Moreover, "protected health care services" includes not just gender-affirming treatment, but also "reproductive health care services." *Id.*

19

1   *Moreno* concerned an amendment to the Food Stamp Act that "exclude[d] from
2   participation in the food stamp program any household containing an individual who is unrelated
3   to any other member of the household." 413 U.S. at 529. This limitation was entirely divorced
4   from the declaration of policy set out in the Food Stamp Act. *Id.* at 533. As a result, the Court
5   had to look to legislative history to determine whether it could discern a rational basis for the
6   limitation. But, the Court lamented, what "little legislative history" there was "indicate[d] that
7   th[e] amendment was intended to prevent socalled 'hippies' and 'hippie communes' from
8   participating in the food stamp program. *Id.* at 534. This, the Court said, was insufficient to
9   satisfy rational basis review because "a purpose to discriminate against hippies cannot, in and of
10  itself and without reference to (some independent) considerations in the public interest, justify
11  the . . . amendment." *Id.* at 534-35 (cleaned up).

12  As should be clear by now, this case does not resemble *Moreno* in the slightest. Unlike
13  *Moreno*, ESSB 5599's provisions connecting vulnerable minors and their families to services
14  are certainly related to the legislative policy of addressing vulnerabilities for unaccompanied
15  youth seeking protected health care. And unlike *Moreno*, nothing plausibly shows an intent to
16  discriminate against a politically unpopular group, let alone that such discrimination "in and of
17  itself and without reference to . . . the public interest" explained the Legislature's decision to
18  pass ESSB 5599. Rather, ESSB 5599 rationally relates to the Legislature's goal of offering
19  additional services to vulnerable youths, and so easily satisfies rational basis review.

20      **5.     Plaintiffs' procedural due process claim fails**

21  A procedural due process claim has two distinct elements: (1) a deprivation of a
22  constitutionally protected liberty or property interest, and (2) a denial of adequate procedural
23  protections. *Brewster v. Bd. Of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (1998).
24  Plaintiffs' procedural due process claim fails at the first element.

25  While parents' rights to make decisions concerning the care, custody, and control of their
26  children is certainly a liberty interest, *see Troxel v. Granville*, 530 U.S. 57, 66 (2000), ESSB 5599

does not interfere with or burden that interest. *See supra* pp. 8-15. ESSB 5599 does nothing to deprive parents of their right to raise their children in their faith tradition. *Contra* Compl. ¶157. Nowhere does ESSB 5599 instruct or allow the State to take custody of runaway youth or require parents to use particular pronouns or provide their children access to gender affirming care. Nor does ESSB 5599 direct DCYF to withhold information from parents about their child's whereabouts. Again, ESSB 5599 simply shifts the responsibility of who notifies parents of their child's whereabouts from shelters to DCYF itself. *See* ESSB 5599, §3. As Plaintiffs themselves observed, DCYF has already implemented policies to ensure DCYF makes a good faith attempt to contact the youth's parent or legal guardian. *See* Policy Memo. In short, no due process or "individualized assessment" is necessary "to see if there is a compelling reason to withhold information about the child's whereabouts," *see* Compl. ¶158, because information about youths is not withheld. Because ESSB 5599 does not deprive Plaintiffs of any liberty interests, Plaintiffs' procedural due process claim should be dismissed.

### 6.  Plaintiffs' vagueness claim fails

"'A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement.'" *Hum. Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1019 (9th Cir. 2010) (citation omitted). If a law imposes neither regulation of nor sanction for conduct, however, then it is outside the scope of the void-for-vagueness doctrine. *See United States v. David H.*, 29 F.3d 489, 491 (9th Cir. 1994) (concluding vagueness did not apply to federal procedure that mandated transfer of juvenile cases to adult status); *see also United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1130 (7th Cir. 1984) ("[Void-for-vagueness] cases have one thing in common: a sanction, whether it be penal or a refusal to grant a license, for allegedly engaging in certain conduct proscribed by a statute. It is the definition of that proscribed or regulated conduct which gives rise to . . . notice concerns . . . .").

Here, ESSB 5599 does not prohibit or sanction any conduct. It merely changes the reporting

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

21

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

requirements for licensed youth programs sheltering a minor seeking protected health care services and requires DCYF to offer referrals for behavioral health services. Plaintiffs argue ESSB 5599 does not give "fair notice" as to whether parents will be required to use the particular pronouns or consent to gender-affirming care in order to reunify with their child. Compl. ¶¶161-62. But, again, nothing in ESSB 5599's plain text even suggests that DCYF will require parents to *do anything* to reunify with their runaway children. *See supra* pp. 16-18. Because ESSB 5599 does not prohibit or define parents' conduct, the due process considerations underlying Plaintiffs' void-for-vagueness challenge have no application here.

**C.     Plaintiffs' state law claims should be dismissed**

Plaintiffs allege three state constitutional claims that are largely redundant of their federal claims. *See* Compl. ¶¶166-92. This Court should not reach those claims because it lacks jurisdiction to order the injunctive relief Plaintiffs seek based on alleged violations of state law. And even if that were not a bar to relief, this Court should decline to exercise supplemental jurisdiction. If, however, the Court nonetheless reaches the merits, it should dismiss each of these claims for the reasons it should dismiss the federal analogs.

**1.     *Pennhurst* bars injunctive relief based on state law claims**

Plaintiffs ask this Court to enjoin ESSB 5599 as contrary to Washington's Constitution, but based on Eleventh Amendment principles of sovereign immunity and federalism, this Court lacks jurisdiction to enjoin a state official's actions as contrary to *state* law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *id.* at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). Thus, a federal court may intervene only if a state official acts " 'without any authority whatever.' " *Id.* at 101 n.11 (citation omitted). But this exception doesn't apply when, as here, the Legislature has specifically directed DCYF to act, which plainly provides more than a " 'colorable basis for the exercise of authority.' " *Id.*

1  The Eleventh Amendment bars Plaintiffs from seeking to enjoin ESSB 5599 under state

2  constitutional law.

3  **2.     The Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims**

4  This Court may exercise supplemental jurisdiction over state law claims pursuant to

5  28 U.S.C. § 1367, but that exercise is discretionary. *See Acri v. Varian Assocs., Inc.*, 114 F.3d

6  999, 1000 (9th Cir. 1997). "In the interests of judicial economy, convenience, fairness, and

7  comity," the Court should decline supplemental jurisdiction over Plaintiffs' state law claims and

8  address their challenge under federal law. *Wise v. Inslee*, No. 2:21-cv-0288-TOR, 2021 WL

9  4951571, at *2 (E.D. Wash. Oct. 25, 2021).

10  **3.     Plaintiffs' state law claims fail for the same reasons as the federal claims**

11  **a.     Due process**

12  Plaintiffs' state due process claim is subject to the identical standards as their federal

13  claim. *In re PRP of Dyer*, 20 P.3d 907, 912 (Wash. 2001) ("Washington's due process clause

14  does not afford a broader due process protection than the Fourteenth Amendment."); *see also In

15  re Custody of Smith*, 969 P.2d 21, 28 (Wash. 1998) (analyzing federal parents' rights case law

16  alongside Washington case law). Accordingly, it fails for the same reasons.

17  **b.     Special privileges and immunities**

18  Washington courts generally "construe[] article I, section 12 of the Washington

19  Constitution to be consistent with the equal protection clause of the Fourteenth Amendment."

20  *Wash. Food Indus. Ass'n & Maplebear, Inc. v. City of Seattle*, 524 P.3d 181, 195 (Wash. 2023).

21  As with their equal protection claim, Plaintiffs' special privileges and immunities claim fails

22  because ESSB 5599 rationally relates to the state's interest in ensuring vulnerable youths have

23  access to services.

24  Plaintiffs argue that Washington's "reasonable ground" test should apply here.

25  Compl. ¶178. But Washington courts only apply the "reasonable ground" test in claims alleging

26

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

23

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   special interest favoritism. *See Grant Cnty. Fire Prot. Dist. No. 5 v. City of Moses Lake*, 83 P.3d

2   419, 427 (Wash. 2004); *Schroeder v. Weighall*, 316 P.3d 482, 485-86 (Wash. 2014). Since

3   Plaintiffs make no claim that ESSB 5599 confers a special privilege or immunity to any class of

4   citizens on unequal terms, the test is inapplicable. *Id*. Instead, Plaintiffs' claims of discrimination

5   are properly analyzed under "the same constitutional analysis that applies under the equal

6   protection clause of the United States constitution." *Andersen v. King County*, 138 P.3d 963, 975

7   (Wash. 2006). Under that analysis, ESSB 5599 would only be subjected to heightened scrutiny

8   if it burdened a fundamental or important right, or a suspect or semi-suspect class. *Schroeder*,

9   316 P.3d at 488. As detailed above, ESSB 5599 does neither. Thus, it is subject only to rational

10   basis review—which, again, it obviously passes.

11            **c.**    **Free speech**

12          Plaintiffs' free speech claim under Washington law fails because it is based on the same

13   baseless allegations as their federal claim. Nothing on the face of ESSB 5599 either chills or

14   compels speech.

15                   **IV.**    **CONCLUSION**

16          The Court should dismiss Plaintiffs' Complaint.

17          DATED this 16th day of October 2023.

18                        ROBERT W. FERGUSON

19                        *Attorney General*

20                        *s/ Cristina Sepe*
                     CRISTINA SEPE, WSBA 53609

21                        MARSHA CHIEN, WSBA 47020
                     *Deputy Solicitors General*

22                        1125 Washington Street SE
                     PO Box 40100

23                        Olympia, WA 98504-0100
                     (360) 753-6200

24                        Cristina.Sepe@atg.wa.gov
                     Marsha.Chien@atg.wa.gov

25                        ANDREW R.W. HUGHES, WSBA 49515

26                        LAURYN K. FRAAS, WSBA 53238
                     *Assistant Attorneys General*

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

24

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*Complex Litigation Division*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
Andrew.Hughes@atg.gov
Lauryn.Fraas@atg.wa.gov

*Counsel for Defendants Jay Inslee,*
*Robert Ferguson, and Ross Hunter*

I certify that this memorandum contains 8,400 words, in compliance with the Local Civil Rules.

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**CERTIFICATE OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System, which will serve a copy of this document upon all counsel of record.

DATED this 16th day of October, 2023, at Olympia, Washington.

*s/ Leena Vanderwood*
Leena Vanderwood
*Paralegal*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Leena.Vanderwood@atg.wa.gov

DEFENDANTS' MOTION TO DISMISS
NO. 3:23-CV-05736-DGE

26

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200