1

2

3

4

5

6

7

8

The Honorable David G. Estudillo

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

9

10

11

12

13

14

15

INTERNATIONAL PARTNERS FOR
ETHICAL CARE, INC., et al.,

                             Plaintiffs,

     v.

JAY INSLEE, Governor of Washington,
et al.,

                             Defendants.

NO. 3:23-cv-05736-DGE

DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT

NOTE ON MOTION CALENDAR:
February 2, 2024

16

17

18

19

20

21

22

23

24

25

26

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

      A.   Washington Law Regarding Runaway Youth ............................................ 2

           1.   Engrossed Substitute Senate Bill 5599 ............................................ 3

           2.   Substitute House Bill 1406 ................................................................ 4

      B.   RCW 71.34.530 ......................................................................................... 5

      C.   Procedural History ..................................................................................... 5

III.  ARGUMENT ...................................................................................................... 5

      A.   Plaintiffs' Claims Are Non-Justiciable ..................................................... 6

           1.   The parent plaintiffs lack standing ................................................... 6

           2.   IPEC and APC lack associational standing .................................... 10

           3.   IPEC and APC lack organizational standing ................................... 11

           4.   Plaintiffs' challenge is unripe ........................................................ 12

      B.   Plaintiffs Fail to State a Claim Under Any Constitutional Theory ......... 13

           1.   Plaintiffs' substantive due process claims fail ............................... 14

                a.   Plaintiffs' medical refusal claims lack merit ........................... 14

                b.   ESSB 5599 does not strip parents of custody over
                     their children ............................................................................. 21

                c.   ESSB 5599 does not violate Plaintiffs' substantive
                     due process rights ..................................................................... 24

           2.   Plaintiffs' free exercise claim fails ................................................ 26

           3.   Plaintiffs' free speech claims fail .................................................. 27

           4.   Plaintiffs' procedural due process claim fails ................................ 29

           5.   Plaintiffs' vagueness claim fails ..................................................... 30

IV.   CONCLUSION .................................................................................................. 31

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

# TABLE OF AUTHORITIES

2

## <u>Cases</u>

3
*American-Arab Anti-Discrimination Comm. v. Thornburgh*,
  970 F.2d 501 (9th Cir. 1991) ............................................................................. 13
4

*Anspach ex rel. Anspach v. City of Philadelphia, Dep't of Pub. Health*,
5
  503 F.3d 256 (3d Cir. 2007) ......................................................................... 18, 19

6
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 6, 14
7

*Balistreri v. Pacifica Police Dep't*,
8
  901 F.2d 696 (9th Cir. 1988) .............................................................................. 6

9
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 6
10

*Boy Scouts of America v. Dale*,
11
  530 U.S. 640 (2000) ....................................................................................... 28

12
*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,
  149 F.3d 971 (1998) ....................................................................................... 29
13

*City & County of San Francisco v. Garland*,
14
  42 F.4th 1078 (9th Cir. 2022) .......................................................................... 13

15
*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................. 6, 8, 10
16

*Cruzan ex rel. Cruzan v. Dir., Missouri Dep't of Health*,
17
  497 U.S. 261 (1990) ....................................................................................... 21

18
*Curtis v. Sch. Comm. of Falmouth*,
  420 Mass. 749 (1995), *cert. denied*,
19
  516 U.S. 1067 (1996) .................................................................................. 18, 19

20
*Dep't of Ecology v. Campbell & Gwinn, L.L.C.*,
  43 P.3d 4 (Wash. 2002) .................................................................................. 22
21

*Diamond v. Charles*,
22
  476 U.S. 54 (1986) .......................................................................................... 7

23
*Doe v. Irwin*,
  615 F.2d 1162 (6th Cir. 1980) ......................................................................... 18, 19
24

*E. Bay Sanctuary Covenant v. Biden*,
25
  993 F.3d 640 (9th Cir. 2021) ............................................................................ 12

26

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*,
   494 U.S. 872 (1990)........................................................................................ 26

*Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*,
   880 F.3d 450, *as amended*,
   881 F.3d 792 (9th Cir. 2018) ........................................................................ 25

*Fields v. Palmdale Sch. Dist.*,
   427 F.3d 1197 (9th Cir. 2005), *opinion amended on denial of reh'g*,
   447 F.3d 1187 (9th Cir. 2006) ................................................................ 15, 16

*Foote v. Town of Ludlow*,
   No. 22-30041-MGM, 2022 WL 18356421 (D. Mass. Dec. 14, 2022) ................ 18

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)........................................................................................ 11

*Fulton v. City of Philadelphia*,
   141 S. Ct. 1868 (2021).................................................................................... 26

*Harris v. Bd. of Supervisors*,
   366 F.3d 754 (9th Cir. 2004) .......................................................................... 9

*Heller v. Doe ex rel. Doe*,
   509 U.S. 312, 320 (1993)................................................................................ 25

*Hill v. Colorado*,
   530 U.S. 703 (2000)........................................................................................ 14

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013)......................................................................................... 6

*Hum. Life of Wash. Inc. v. Brumsickle*,
   624 F.3d 990 (9th Cir. 2010) .......................................................................... 30

*In Def. of Animals v. Sanderson Farms, Inc.*,
   No. 20-cv-05293-RS, 2021 WL 4243391 (N.D. Cal. Sept. 17, 2021) ............... 12

*Jacobs v. Clark Cnty. Sch. Dist.*,
   526 F.3d 419 (9th Cir. 2008) .......................................................................... 26

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
   78 F.4th 622 (4th Cir. 2023) .......................................................................... 10

*Jordan v. D.C.*,
   161 F. Supp. 3d 45 (D.D.C. 2016)................................................................... 20

*Jordan v. D.C.*,
   686 F. App'x 3 (D.C. Cir. 2017) (Mem.) ....................................................... 21

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Juliana v. United States*,
  947 F.3d 1159 (9th Cir. 2020) ........................................................................ 9

*Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*,
  927 F.3d 396 (6th Cir. 2019) ........................................................................ 20

*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010) ...................................................................... 10

*L.A. All. for Hum. Rts. v. County of Los Angeles*,
  14 F.4th 947 (9th Cir. 2021) ......................................................................... 11

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ................................................................. 11, 12

*Laird v. Tatum*,
  408 U.S. 1 (1972) .......................................................................................... 28

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 8

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) ..................................................................................... 8, 9

*Nat. Res. Def. Council v. EPA*,
  735 F.3d 873 (9th Cir. 2013) (*NRDC*) ....................................................... 9, 10

*Our Watch With Tim Thompson v. Bonta*,
  No. 23-cv-00422-DAD-DB, 2023 WL 4600117 (E.D. Cal. July 18, 2023) ........ 12

*Parents for Privacy v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ................................................................. 26, 27

*Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*,
  657 F. Supp. 3d 1161 (W.D. Wis. 2023), *appeal docketed*,
  No. 23-1534 (7th Cir. Mar. 21, 2023) ........................................................... 10

*Parham v. J. R.*,
  442 U.S. 584 (1979) ...................................................................................... 21

*Reardon v. Midland Cmty. Schs.*,
  814 F. Supp. 2d 754 (E.D. Mich. 2011) ............................................... 18, 19, 20

*Rodriguez v. City of San Jose*,
  930 F.3d 1123 (9th Cir. 2019) ...................................................................... 12

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ........................................................................ 6

*Smith v. Seibly*,
  431 P.2d 719 (Wash. 1967) ...................................................................... 5, 17

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ................................................................................ 27

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) (en banc) ............................................................... 13

*Troxel v. Granville*,
  530 U.S. 57 (2000) ......................................................................................... 16, 29

*United States ex rel. Fitzgerald v. Jordan*,
  747 F.2d 1120 (7th Cir. 1984) ............................................................................... 30

*United States v. David H.*,
  29 F.3d 489 (9th Cir. 1994) .................................................................................. 30

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ............................................................................... 11

*Vernon v. City of Los Angeles*,
  27 F.3d 1385 (9th Cir. 1994) ................................................................................. 28

*Wallis v. Spencer*,
  202 F.3d 1126 (9th Cir. 2000) ............................................................................... 20

*Warth v. Seldin*,
  422 U.S. 490 (1975) ............................................................................................... 6

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ................................................................................... 13, 21, 24

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) .............................................................................................. 25

*Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trs.*,
  No. 23-cv-069-SWS, 2023 WL 4297186 (D. Wyo. June 30, 2023) ...................................... 18

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972) .............................................................................................. 27

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) ............................................................................... 13

**Statutes**

1985 Wash. Sess. Laws, ch. 354, § 1 ......................................................................... 5

1995 Wash. Sess. Laws, ch. 312,
  § 1 ..................................................................................................................... 2
  § 34 (*codified as* RCW 13.32A.082) ........................................................................ 2

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

v

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1996 Wash. Sess. Laws, ch. 133 ........................................................................ 2

2010 Wash. Sess. Laws, ch. 229 ........................................................................ 2

2011 Wash. Sess. Laws, ch. 151 ........................................................................ 2

2013 Wash. Sess. Laws, ch. 4 ....................................................................... 2, 3

Engrossed Substitute S.B. 5599,
    68th Leg., Reg. Sess. (Wash. 2023),
    *enacted as* 2023 Wash. Sess. Laws, ch. 408 ............ 1, 3–4, 6–8, 11, 13, 17–18, 20–27, 29–30

RCW 13.32A.030(11) ........................................................................................ 4

RCW 13.32A.082 ........................................................... 2–4, 8, 22–23, 26, 28–29
    RCW 13.32A.082(1)(b) ............................................................................... 8
    RCW 13.32A.082(1)(b)(ii) ........................................................................ 22
    RCW 13.32A.082(3) ...................................................... 22, 26, 27, 28, 29
    RCW 13.32A.082(4) .................................................................................. 29

RCW 13.34.050 .............................................................................................. 24

RCW 13.34.060(1) .......................................................................................... 29

RCW 13.50.100(7)(a) ..................................................................................... 23

RCW 71.24.025(11) ........................................................................................ 21

RCW 71.34.530 ............................................... 5–6, 8–9, 11, 13–15, 17–18, 20–22, 25, 27–28

Substitute H.B. 1406,
    68th Leg., Reg. Sess. (Wash. 2023),
    *enacted as* 2023 Wash. Sess. Laws, ch. 151 ..................... 1, 3–7, 9, 11, 14, 17, 23–25, 29–30

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................... 5

Fed. R. Civ. P. 12(b)(6) .................................................................................... 6

**Other Authorities**

*Attorney Call to Parents*,
    Partners for Ethical Care, (*updated* Nov. 7, 2023),
    https://www.partnersforethicalcare.com/post/attorney-call-to-parents .................................. 6

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

vi

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

2

H.B. Rep. on Engrossed Substitute S.B. 5599,
    68th Leg., Reg. Sess. (Wash. 2023) ..................................................................... 25

3

House Floor Debate on Engrossed Substitute S.B. 5599 (Apr. 23, 2013),
    *video recording by* TVW, https://tvw.org/video/house-floor-debate-april-12-
    2023041141/?eventID=2023041141 ...................................................................... 4

4

5

Kinzi Sparks, *National Estimate of LGBTQ Youth Seriously Considering Suicide*,
    The Trevor Project (June 27, 2019), https://www.thetrevorproject.org/
    blog/national-estimate-of-lgbtq-youth-seriously-considering-suicide/ ................................ 26

6

7

Senate Hum. Servs. Pub. Hr'g on Engrossed Substitute S.B. 5599 (Feb. 6, 2023),
    *video recording by* TVW, https://tvw.org/video/senate-human-services-
    2023021142/?eventID=2023021142 ........................................................................ 3

8

9

The Trevor Project, *Homelessness and Housing Instability Among LGBTQ Youth*,
    https://www.thetrevorproject.org/wp-content/uploads/2022/02/Trevor-Project-
    Homelessness-Report.pdf (last visited Dec. 12, 2023) ............................................... 3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

vii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# I.   INTRODUCTION

Seeking to restrict the ability of transgender youth to access healthcare, Plaintiffs ask this Court to invalidate three Washington laws, but they lack standing and their claims fail as a matter of law. The Court should therefore dismiss this case.

Plaintiffs' complaint focuses on Engrossed Substitute Senate Bill 5599 and Substitute House Bill 1406, which are modest steps to address the crisis of transgender youth homelessness. Together, the bills give Washington's Department of Children, Youth, and Families (DCYF) an opportunity to offer services to transgender youth and their families before youth disappear from shelters to the streets. They do so by (1) requiring licensed shelters to notify DCYF when a youth runaway shows up, and (2) requiring DCYF to notify the youth's parents, offer to make referrals for behavioral health services, and offer services to help reunify the youth with their family within 72 hours of receiving notice. Plaintiffs also challenge a long-standing state law that allows adolescents to consent to outpatient mental health treatment. Plaintiffs' complaint fundamentally misrepresents these laws, which do not change standards of care or medical consent standards for minors (or anyone else) or coerce youth into receiving mental health treatment.

This Court should dismiss this case for two primary reasons. First, Plaintiffs lack Article III standing. None alleges their children are seeking gender-affirming care and have run away or that they have been affected by the law's modified notification requirements for licensed shelters and DCYF. And on the merits, the challenged laws simply do not do most of the things Plaintiffs say they do. The laws do not prevent parents from being notified when their children show up at a shelter. They do not permit DCYF to take custody of transgender youth or otherwise permit DCYF to interfere with any parent's custody. They do not require parents to refer to their children in a particular way, nor affect their rights to raise their children in accordance with their faiths. In short, Plaintiffs' principal allegations are wrong and their claims fail as a matter of law.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## II.     BACKGROUND

### A.     Washington Law Regarding Runaway Youth

Recognizing the "need for services and assistance for parents and children who are in conflict," in 1995, the Washington Legislature enacted new notification requirements for parents of runaway minors, with the intent of "giv[ing] tools to parents, courts, and law enforcement to keep families together and reunite them whenever possible." 1995 Wash. Sess. Laws, ch. 312, § 1. As relevant here, the statute at the time provided:

> Any person who, without legal authorization, provides shelter to a minor and who knows at the time of providing the shelter that the minor is away from the parent's home, or other lawfully prescribed residence, without the permission of the parent, shall promptly report the location of the child to the parent, the law enforcement agency of the jurisdiction in which the person lives, or the department.

*Id.* § 34 (*codified as* RCW 13.32A.082). The next year, the Legislature added that if the Department of Social and Health Services received such a report, it must "make a good faith attempt to notify the parent that a report has been received and offer services designed to resolve the conflict and accomplish a reunification of the family." 1996 Wash. Sess. Laws, ch. 133, § 14(3) (This duty was later reassigned to DCYF after DCYF's creation in 2017.).

In 2013, the Legislature again amended RCW 13.32A.082, distinguishing between unlicensed and licensed shelters.[1] Unlicensed shelters remained subject to the above-described requirements. Meanwhile, licensed overnight youth shelters were required to notify a youth's parents within 72 hours (but preferably within 24 hours) after the youth is admitted to the shelter, providing information about "the whereabouts of the youth, a description of the youth's physical and emotional condition, and the circumstances surrounding the youth's contact with the shelter or organization." 2013 Wash. Sess. Laws, ch. 4, § 2. The provision made an exception for "compelling reasons," which "include, but are not limited to, circumstances that indicate that notifying the parent or legal guardian will subject the minor to abuse or neglect as defined in

---

[1] A previous version of this bill passed in 2010 with a sunset date of July 1, 2012. *See* 2010 Wash. Sess. Laws, ch. 229, § 2; 2011 Wash. Sess. Laws, ch. 151, § 1.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

2

chapter RCW 26.44.020." *Id.* In those instances, the law directed licensed shelters to notify the Department, which in turn was required make a good faith attempt to notify the parent that it received a report about a youth seeking shelter and offer services designed to resolve conflict and reunify the family. *Id.*

In 2023, the Legislature enacted ESSB 5599 and SHB 1406, further amending RCW 13.32A.082, as described below. Plaintiffs challenge these most recent amendments.

### 1.    Engrossed Substitute Senate Bill 5599

Unaccompanied youth homelessness poses serious threats to youth health and safety. As reflected in the legislative history of ESSB 5599, LGBTQ+ youth are at greater risk of experiencing some form of homelessness compared to their heterosexual or cisgender peers and report experiencing higher rates of abuse and mental health issues.[2] Washington's Legislature passed ESSB 5599 to address the health and safety risks to transgender or pregnant youth experiencing homelessness. Engrossed Substitute S.B. 5599, § 1, 68th Leg., Reg. Sess. (Wash. 2023), *enacted as* 2023 Wash. Sess. Laws, ch. 408. Finding "that barriers to accessing shelter can place a chilling effect on exiting unsheltered homelessness and therefore create additional risk and dangers for youth," ESSB 5599 "remove[s] barriers to accessing temporary, licensed shelter accommodations for youth seeking certain protected health care services." *Id.* As discussed earlier, prior to ESSB 5599, licensed shelters generally had to contact parents within 72 hours of the youth's arrival unless there were compelling circumstances not to, e.g., when notifying the parent would subject the minor to abuse or neglect. Fear of this notification requirement caused some transgender youth to leave the safety of shelters or avoid them

---

[2] *See* Senate Human Services Public Hearing on ESSB 5599 (Feb. 6, 2023), at 1:19:15–1:19:40, *video recording by* TVW, https://tvw.org/video/senate-human-services-2023021142/?eventID=2023021142 (testimony noting LGBTQ+ youth account for at least 40% youth experiencing homelessness in King County); *see also* The Trevor Project, *Homelessness and Housing Instability Among LGBTQ Youth*, https://www.thetrevorproject.org/wp-content/uploads/2022/02/Trevor-Project-Homelessness-Report.pdf (last visited Dec. 12, 2023) (35% to 39% of transgender or nonbinary youth have experienced housing instability).

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

altogether.[3] So ESSB 5599 specified that if a youth seeking protected health care services—including gender-affirming care or reproductive health services—arrives at a licensed shelter, the shelter must contact DCYF instead of contacting the youth's parents directly. *Id.* § 2. And upon receipt of information from a shelter about a youth, DCYF must make a good faith attempt to notify parents about the youth, offer to make referrals on behalf of the youth for behavioral health services, and offer services to the youth and their families to help resolve family conflict and reunify the family. *Id.* Thus, ESSB 5599 gives DCYF an opportunity to connect vulnerable youth and their families to additional services.

### 2.    Substitute House Bill 1406

During the 2023 session, the Legislature unanimously passed SHB 1406. SHB 1406, in part, gives DCYF a deadline to offer services under RCW 13.32A.082, requiring DCYF to contact families and offer services, including family reconciliation services,[4] as soon as possible but no later than three days (excluding weekends and holidays) following a report from a licensed youth shelter about a youth seeking protected health services. Substitute H.B. 1406, § 2, 68th Leg., Reg. Sess. (Wash. 2023), *enacted as* 2023 Wash. Sess. Laws, ch. 151.

SHB 1406 also allows a minor to stay in a licensed overnight youth shelter for up to 90 days if the shelter: (1) is unable to make contact with a parent despite the shelter's notification efforts required by law; or (2) makes contact with a parent, but the parent does not request that the child return home. SHB 1406, § 2. If a minor remains in a shelter under these circumstances,

---

[3] *See* House Floor Debate on ESSB 5599 (Apr. 23, 2013), at 2:32:07–2:33:45, *video recording by* TVW, https://tvw.org/video/house-floor-debate-april-12-2023041141/?eventID=2023041141 (remarks of Representative Julio Cortes).

[4] "Family reconciliation services" means services provided by culturally relevant, trauma-informed community-based entities under contract with the department, or provided directly by the department, designed to assess and stabilize the family with the goal of resolving crisis and building supports, skills, and connection to community networks and resources including, but not limited to:
    (a) Referrals for services for suicide prevention, psychiatric or other medical care, psychological care, behavioral health treatment, legal assistance, or educational assistance;
    (b) Parent training;
    (c) Assistance with conflict management or dispute resolution; or
    (d) Other social services, as appropriate to meet the needs of the child and the family.
RCW 13.32A.030(11); *see also* Declaration of Cristina Sepe Decl., Ex. H.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    SHB 1406 requires the shelter to contact DCYF, and DCYF must then offer family reconciliation

2    services within 72 hours after receiving the report. *Id.* § 1; *see* Sepe Decl., Exs. E, F.

3    **B.    RCW 71.34.530**

4         Plaintiffs also challenge RCW 71.34.530. That statute allows adolescents 13 and older to

5    consent to outpatient mental health treatment.[5] The statute was first enacted in 1985, as part of a

6    comprehensive act "ensur[ing] that minors in need of mental health care and treatment receive

7    appropriate care and treatment . . . ." 1985 Wash. Sess. Laws, ch. 354, § 1. Washington is not

8    alone in its approach; over 30 states allow minors to consent to mental health care. *See* Appendix.

9    **C.    Procedural History**

10        Plaintiffs—initially four sets of parents and two organizations who oppose gender-

11   affirming care—filed suit in August 2023, challenging ESSB 5599 on a facial basis. Plaintiffs

12   sued Governor Inslee, Attorney General Ferguson, and DCYF Secretary Ross Hunter in their

13   official capacities. Following the State Defendants' motion to dismiss, Plaintiffs amended their

14   complaint.

15        Plaintiffs' First Amended Complaint (FAC) adds one more set of parent plaintiffs and

16   also challenges SHB 1406 and RCW 71.34.530. None of the Plaintiffs allege that ESSB 5599,

17   SHB 1406, and RCW 71.34.530 apply to them—i.e., none have a transgender youth who have

18   run away to a licensed shelter and received or sought gender-affirming care or outpatient mental

19   health treatment without parental consent. Nor do the organizations allege the challenged laws

20   apply to any of their members. Nonetheless, they allege a raft of facial constitutional violations,

21   based on ways the laws supposedly interfere with their rights to parent.

22                              **III.    ARGUMENT**

23        Under Rule 12(b)(1), a complaint must be dismissed if its allegations "are insufficient on

24   their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

25

26        ⁵ State common law also recognizes that minors may possess the maturity to consent to particular health
     care treatment without parental consent. *See Smith v. Seibly*, 431 P.2d 719 (Wash. 1967).

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE                    5              ATTORNEY GENERAL OF WASHINGTON
                                                              1125 Washington Street SE
                                                                   PO Box 40100
                                                             Olympia, WA 98504-0100
                                                                  (360) 753-6200

1   (9th Cir. 2004). The plaintiff bears the burden to "clearly to allege facts demonstrating that he is

2   a proper party to invoke judicial resolution of the dispute . . . ." *Warth v. Seldin*, 422 U.S. 490,

3   518 (1975).

4        Under Rule 12(b)(6), "only a complaint that states a plausible claim for relief survives a

5   motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rule 12(b)(6) dismissal may be

6   based either on a "lack of a cognizable legal theory or the absence of sufficient facts alleged

7   under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th

8   Cir. 1988). While courts must take all factual allegations in the complaint as true, they are not

9   bound to accept as true labels, formulaic recitations of a claim's elements, or legal conclusions

10  couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing

11  *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

12  **A.      Plaintiffs' Claims Are Non-Justiciable**

13       **1.      The parent plaintiffs lack standing**

14       This case should begin and end with standing. To have standing, a plaintiff's "injury

15  must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged

16  action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

17  409 (2013) (citation omitted). The "threatened injury must be certainly impending to constitute

18  injury in fact." *Id.* at 410 (citation omitted).

19       The parent plaintiffs do not allege any concrete, particularized, actual or imminent injury;

20  instead, their complaint reflects only a policy disagreement with ESSB 5599, SHB 1406, and

21  RCW 71.34.530. This bare disagreement with the law is not sufficient to confer standing.[6] *See*

22  *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) ("The presence of a disagreement, however

23  sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements."

24

25       [6] Indeed, this is a case in search of plaintiffs. *See Attorney Call to Parents*, Partners for Ethical Care,
    (*updated* Nov. 7, 2023), https://www.partnersforethicalcare.com/post/attorney-call-to-parents (seeking "[p]arents
26  with a child who struggles with gender identity issues and who has run away in the past or is threatening to do so
    now" to join as co-plaintiffs).

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE                    6          ATTORNEY GENERAL OF WASHINGTON
                                                          1125 Washington Street SE
                                                               PO Box 40100
                                                          Olympia, WA 98504-0100
                                                              (360) 753-6200

(citation omitted)); *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (Article III "is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests'" (citation omitted)).

The parents base their purported injuries on their belief that ESSB 5599 and SHB 1406 "allow[] shelters and homes to keep children at locations without their parents' knowledge and refer those children for health interventions without their parents' knowledge or approval." FAC ¶ 6. Not only is this interpretation of the amended statute wrong (as set out below), but even if it were accurate, the parent plaintiffs never explain how it harms them specifically. Before they could plausibly suffer any injury, their child would have to: (1) have a gender identity that is different from their sex assigned at birth; (2) be seeking or receiving gender-affirming care; (3) run away from home; (4) seek refuge with a licensed homeless shelter or organization; (5) decline to share parental information with and receive reconciliation services from DCYF; (6) accept a DCYF referral for behavioral health services; and (7) obtain gender-affirming care, including mental health care, from a provider without parental consent based on that referral. None of the parents come close to satisfying this causal chain.

For Parents 4A and 4B, their allegations end before the first event in this chain as they do not allege any of their three children are transgender. FAC ¶¶ 42–47. For Parents 2A, 2B, 3A, and 3B, their allegations end before the second event, as there are no allegations that 2D and 3C are seeking gender-affirming care. Nor have 2D or 3C threatened to run away from home. Parents 2A and 2B assert only that their 18-year-old, 2C, is ready to take 2D to a "safe place." FAC ¶ 24. Likewise, Parents 3A and 3B allege that other adults have invited 3C's older brother to live with them. FAC ¶ 38. For Parents 1A and 1B, their allegations end before the third event in the chain. They assert that their child, 1C, has shown "signs of gender dysphoria" and met with a school counselor for a few months. FAC ¶ 13. They fear that other adults or family friends might encourage 1C to "re-transition," FAC ¶ 17, or that the challenged laws would incentivize 1C to run away, FAC ¶ 18. But there are no allegations 1C has threatened to run away or actually

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    has run away from home. Finally, the allegations of Parents 5A and 5B end before the fourth

2    event in the chain. They allege that 5C currently sees a school counselor, and has seen therapists

3    in the past, but they never allege that they would not consent to such counseling or therapy.

4    FAC ¶ 57. They also allege that 5C has run away in the past, but do not allege to where and

5    whether it was a licensed shelter at all. FAC ¶ 54.

6        No parent plaintiff alleges that their children are currently receiving protected health care.

7    None alleges their children have run away to seek refuge with a licensed organization that is

8    subject to the requirements of RCW 13.32A.082(1)(b). As such, none can allege that DCYF has

9    referred their youth for voluntary services or failed to disclose information about their children's

10   presence at a licensed shelter. Additionally, no plaintiff alleges their adolescent (age 13 or over)

11   has received outpatient mental health care treatment without parental consent under

12   RCW 71.34.530. Rather, the parent plaintiffs only allege potential "injury at some indefinite

13   future time" without a "high degree of immediacy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564

14   n.2 (1992). Such "allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S.

15   at 409 (cleaned up). While Plaintiffs contend the challenged laws make it *possible* their children

16   may someday seek refuge with a licensed shelter and obtain gender-affirming care without their

17   consent based on DCYF referrals, they do not allege any facts to support the likelihood or timing

18   of such actions. *Lujan*, 504 U.S. at 564 (" '[S]ome day' intentions—without any description of

19   concrete plans, or indeed even any specification of *when* the some day will be—do not support

20   a finding of the 'actual or imminent' injury that our cases require.").

21       Plaintiffs attempt to rebut pre-emptively their standing deficiencies by quoting

22   *Massachusetts v. EPA*. FAC ¶ 142. But reliance on this case is misplaced. There, the Supreme

23   Court held that Massachusetts had standing to challenge the EPA's steadfast refusal to regulate

24   greenhouse gas emissions. *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007). The Court reasoned

25   that Massachusetts was entitled to "special solicitude" in the standing analysis because Congress

26   had created a " 'procedural right' " to judicial review " 'without meeting all the normal standards

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    for redressability and immediacy'" under a federal statute. *Id.* at 517–18 (quoting *Lujan*, 504

2    U.S. at 572 n.7); *see id.* at 516 ("Congress has the power to define injuries and articulate chains

3    of causation that will give rise to a case or controversy where none existed before." (quoting

4    *Lujan*, 504 U.S. at 580)). Moreover, the Court heavily weighed that Massachusetts was

5    protecting its "quasi-sovereign interests" to regulate and protect its citizens from greenhouse

6    gases. *Id.* at 520. None of the factors entitling Massachusetts to "special solicitude" are present

7    here. Plaintiffs are not vindicating a procedural right and have no sovereign prerogative. *See*

8    *Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020) (rejecting the plaintiffs' standing

9    argument asserted under *Massachusetts v. EPA* because they "d[id] not assert a procedural right,

10    but rather a substantive due process claim").

11        Plaintiffs also cite cases on probabilistic standing and the increased risk of harm,

12    FAC ¶¶ 144–45, but those cases are inapplicable. The imminent injury in *Harris v. Board of*

13    *Supervisors*, for instance, is easily distinguishable. There, the plaintiffs were chronically ill

14    individuals who faced the risk of losing medical services through a hospital closure and a great

15    reduction of patient beds at another hospital. *Harris*, 366 F.3d 754, 762 (9th Cir. 2004). The

16    Ninth Circuit found the plaintiffs to have "demonstrated that the County *already* ha[d] difficulty

17    providing" access to care to plaintiffs who had been and were current patients of county-run

18    hospitals. *Id.* This allowed the plaintiffs to establish standing because "it [was] not speculative

19    to anticipate that reducing the resources available w[ould] *further* impede the County's ability

20    to deliver medical treatment" to the plaintiff patients. *Id.* (emphasis added). By contrast, here,

21    Plaintiffs have not shown either past harm or the imminence of future harm based on ESSB 5599,

22    SHB 1406, or RCW 71.34.530.

23        Plaintiffs also invoke *Natural Resources Defense Council v. EPA*, 735 F.3d 873 (9th

24    Cir. 2013) (*NRDC*), to assert they have alleged "a credible threat" of injury. FAC ¶ 145. But that

25    case found a credible threat from the EPA's approval of a chemical only because it was a near

26    certainty that the plaintiffs' children would be exposed to the chemical. *NRDC*, 735 F.3d

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

at 878–89 (plaintiffs had established a credible threat where "[t]he ubiquity of textiles and the lack of public information concerning the chemical treatments applied to them during the manufacturing process" would have made it "nearly impossible" for the plaintiffs to have eliminated the chemically-treated textiles from their children's lives). Here, by contrast, Plaintiffs have not come anywhere close to alleging facts showing any remotely approaching certainty that their children will access gender-affirming care while in a licensed shelter without parental knowledge or consent. *See id.*; *see also Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010) (employees alleged "credible threat" of harm from stolen laptop with unencrypted personal data but allegations would be less credible if based on the risk the laptop may be stolen in the future).

In short, the parents cannot show how the challenged laws have actually injured or will imminently injure them; they only argue in the abstract that the laws *might* apply to their children at some point in the future. Put another way, "Plaintiff[s'] entire standing argument is premised on a speculative chain of possibilities, including future choices made by individuals who have not yet been identified, indeed who *cannot* yet be identified because they have *not* acted, and they might *never* act." *Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*, 657 F. Supp. 3d 1161, 1171 (W.D. Wis. 2023), *appeal docketed*, No. 23-1534 (7th Cir. Mar. 21, 2023); *see John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 631 (4th Cir. 2023) (parents lacked standing to challenge school district's gender identity guidelines based on attenuated future harm); *Clapper*, 568 U.S. at 413–14 (declining to confer standing based on a "speculative chain of possibilities" that "require[d] guesswork as to how independent decisionmakers will exercise their judgment[]"). The parent plaintiffs' speculative allegations are insufficient to confer standing.

### 2. IPEC and APC lack associational standing

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Like the individual parents, neither IPEC nor APC has alleged injuries sufficient for standing. IPEC claims "approximately two dozen parents" as members based in Washington, including at least one member who is a parent with custody of a minor child "who experiences gender confusion, has received counseling for such, and is at risk of running away." FAC ¶¶ 9, 150. APC does not describe its members at all. FAC ¶ 10.

The complaint does not identify any member of either group who has suffered—or is imminently likely to suffer—harm purportedly caused by ESSB 5599, SHB 1406, or RCW 71.34.530. It points to only one IPEC member who is a Washington resident with custody of a minor with gender dysphoria. *See* FAC ¶¶ 9, 150. But as with the anonymous parent plaintiffs, the complaint does not allege that the member's child obtained outpatient behavioral health care treatment without parental consent, any facts suggesting the minor is imminently likely to run away to a licensed shelter, whether the minor's gender dysphoria persists, or whether the minor is seeking protected healthcare. *See id.* Because IPEC and APC have not shown that their "members would otherwise have standing to sue in their own right," they lack associational standing. *L.A. All. for Hum. Rts. v. County of Los Angeles*, 14 F.4th 947, 959–60 (9th Cir. 2021).

### 3.    IPEC and APC lack organizational standing

An organization has standing on its own behalf if it can show: (1) that the defendant's actions have frustrated its mission; and (2) that it has spent resources counteracting that frustration. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013). An organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

IPEC points to its "very purpose" of opposing gender-affirming care to assert standing, FAC ¶ 150, but this is insufficient. Neither IPEC nor APC have alleged any actual injury—in the form of a real-world impediment to their activities—caused by the challenged laws. *See In Def. of Animals v. Sanderson Farms, Inc.*, No. 20-cv-05293-RS, 2021 WL 4243391, at *3 (N.D. Cal. Sept. 17, 2021) ("Frustration of mission cannot be just a setback to an organization's values or interests, it must result in 'an actual impediment to the organization's real-world efforts on behalf of such principles.'" (citation omitted)). In particular, there are no allegations the challenged laws have caused them to divert resources and suffer "some other injury if [they] had not diverted resources to counteracting the problem." *La Asociacion*, 624 F.3d at 1088. Courts routinely deny organizational standing where, as here, the challenged policy does not concretely impede the organization's activities. *Compare Our Watch With Tim Thompson v. Bonta*, No. 23-cv-00422-DAD-DB, 2023 WL 4600117, at *6 (E.D. Cal. July 18, 2023) (complaint "devoid of any allegations pertaining to what plaintiff's regular activities are and how [the law]'s enactment specifically impacts the organization's functions[ ]"), *and Rodriguez v. City of San Jose*, 930 F.3d 1123, 1136 (9th Cir. 2019) (gun rights organizations "offered no theory explaining their organizational harm"), *with E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663–64 (9th Cir. 2021) (legal services organizations had organizational standing because challenged rule made majority of prospective clients ineligible for asylum, detained those eligible for asylum at ports of entry hundreds of miles away from the organizations, and decreased the funding the organizations relied upon to represent asylum seekers).

IPEC and APC have not described how their functions or funding have been hampered by the challenged laws, nor what actions they have had to take in response to those laws. They lack organizational standing.

### 4.    Plaintiffs' challenge is unripe

Plaintiffs' failure to show any actual or imminent injury from the challenged laws means their claims are constitutionally unripe too. *Thomas v. Anchorage Equal Rts. Comm'n*,

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) ("[I]n many cases, ripeness coincides squarely with standing's injury in fact prong."). The "possibility of some future unconstitutional application" of the law does not "entitle Plaintiffs to dispositive judgments on the provision's constitutionality." *City & County of San Francisco v. Garland*, 42 F.4th 1078, 1086–87 (9th Cir. 2022). The Court should dismiss because there is no concrete controversy.

The Court could alternatively decline to exercise jurisdiction over this case because it is prudentially unripe. To determine whether a case is prudentially ripe, courts consider (1) whether the issues are fit for judicial resolution and (2) the potential hardship to the parties if judicial resolution is postponed. *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010); *id.* at 1064 (finding certain claims were not ripe because they rested upon contingent future events that might not occur as anticipated, if at all). Neither prong is met. First, Plaintiffs' claims depend entirely on how the laws *might* be applied to their children if their children run away to a licensed shelter, seek gender-affirming care, and actually receive that care. They offer no basis to predict whether this will actually happen other than conjecture. Second, Plaintiffs have not shown how withholding review would result in direct and immediate hardship to them. Because Plaintiffs' case is based on speculative assertions that may never happen, the Court should find the case is not ripe and decline to exercise jurisdiction. *Cf. American-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 511 (9th Cir. 1991) (issue premature where none of the individual plaintiffs were at the time charged under the challenged provisions).

**B.      Plaintiffs Fail to State a Claim Under Any Constitutional Theory**

Even if jurisdiction exists, Plaintiffs' facial claims fail as a matter of law. To state a cognizable facial challenge, Plaintiffs must plausibly allege "'that no set of circumstances exists under which the [challenged laws] would be valid, i.e., that the law[s are] unconstitutional in all of [their] applications.'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (citation omitted). For vagueness claims, uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes or requires "in the vast majority

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (citation omitted). Plaintiffs come nowhere near meeting these burdens. Rather, their claims are based on false and implausible allegations about what the challenged laws do. ESSB 5599 directs DCYF to offer referrals to *optional* behavioral health care. ESSB 5599 does not, either alone or in conjunction with RCW 71.34.530, coerce children to receive mental health care or prohibit them from conferring with their parents, permit DCYF to abstain from attempting to contact parents, strip parents of custody over their children, force parents to call their children by pronouns consistent with their children's gender identity, or do any of the other things Plaintiffs allege. And because the challenged laws do not interfere with *any* of Plaintiffs' fundamental rights, their claims are subject to rational basis review—a standard easily met here.

### 1.    Plaintiffs' substantive due process claims fail

Plaintiffs allege essentially two substantive due process claims. First, they allege that ESSB 5599 and SHB 1406, in conjunction with RCW 71.34.530, interfere with their right to refuse treatment on behalf of their minor children. Second, they allege that ESSB 5599 and SHB 1406 interfere with their custody of their children. Both should be rejected, as both rest on legally untenable mischaracterizations of the challenged laws. *Iqbal*, 556 U.S. at 678 ("[Courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" (citation omitted)).

### a.    Plaintiffs' medical refusal claims lack merit

Plaintiffs' medical refusal claim fundamentally mischaracterizes how ESSB 5599 and RCW 71.34.530 work. Because ESSB 5599 merely requires DCYF to offer voluntarily referrals, and does not compel medical treatment of minors, Plaintiffs' claims fail as a matter of law.

Plaintiffs' initial complaint alleged—falsely—that ESSB 5599 "authoriz[es] the child to engage in 'treatment' not authorized by the parent," and "authoriz[es] the State to provide such treatment." Dkt. #1 at ¶¶ 103–04. In its initial motion, the State explained that, in fact,

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    "ESSB 5599 has absolutely no effect . . . on Washington's medical-consent laws, including what

2    treatments may be provided to youth with and without parental consent." Dkt. #30 at 9.

3         Now, in an effort to fix that glaring defect, Plaintiffs drag RCW 71.34.530 into the mix,

4    arguing that it does not "mitigate th[e] harm" of DCYF providing referrals to vulnerable youth,

5    for two reasons. FAC ¶ 109. First, they allege, ESSB 5599 "do[es] not specify an age minimum

6    for the referral," and thus "allows the State to refer children of any age for 'behavioral health

7    services.'" *Id.* ¶ 110. This is frivolous: generally applicable consent laws obviously still apply

8    to any voluntary services where youths receive a referral from DCYF. Moreover, Plaintiffs'

9    transgender children are all older than 13, so Plaintiffs lack standing to challenge hypothetical

10   referrals for children under 13. *See* FAC ¶¶ 11, 21, 31, 48.

11        Second, Plaintiffs claim RCW 71.34.530 does not undermine their challenge to

12   ESSB 5599 because the act "now interjects the State between parents and children when it

13   would otherwise not have authority to be involved." FAC ¶ 111; *see also* FAC ¶ 163 (alleging

14   ESSB 5599 'violates [parents'] right[s] by giving the Department authority to make referrals,

15   without notice to or consultation with parents, for 'appropriate behavioral health services' for a

16   child seeking 'gender-affirming treatment'"). Essentially the argument is that by giving youths

17   access to information about voluntary services, ESSB 5599 violates parents' rights. But this

18   argument is foreclosed by Ninth Circuit precedent.

19        *Fields v. Palmdale School District* concerned a survey provided to public elementary

20   school children that included questions on sexual topics, including "topics such as the frequency

21   of 'thinking about having sex' and 'thinking about touching other peoples' private parts.'" 427

22   F.3d 1197, 1200 (9th Cir. 2005), *opinion amended on denial of reh'g*, 447 F.3d 1187 (9th

23   Cir. 2006). Although the school sent a parental consent letter home, "[t]he letter did not explicitly

24   state that some questions involved sexual topics[.]" *Id.* at 1201–02. After learning of the survey,

25   parents sued, alleging that the administration of the survey "deprived them of their . . .

26   fundamental right 'to control the upbringing of their children by introducing them to matters of

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

and relating to sex in accordance with their personal and religious values and beliefs.' " *Id.* at 1203. The district court dismissed their complaint, and the Ninth Circuit affirmed.

As the Ninth Circuit explained, "the right of parents to make decisions concerning the care, custody, and control of their children is a fundamental liberty interest protected by the Due Process Clause." *Id.* at 1204 (citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000)). But "[a]s with all constitutional rights, the right of parents to make decisions concerning the care, custody, and control of their children is not without limitations." *Id.* (citing, *inter alia*, *Prince v. Massachusetts*, 321 U.S. 158 (1944), and *Runyon v. McCrary*, 427 U.S. 160, 177 (1976)). In particular, "a number of cases . . . have upheld the constitutionality of school programs that educate children in sexuality and health." *Id.* at 1204–05 (collecting cases). Following these cases, the *Fields* Court held that "[t]he parents' . . . right 'to control the upbringing of their children' " did not include "the right to limit what . . . state actors may tell their children regarding sexual matters." *Id.* at 1207 (citation omitted).

To the extent Plaintiffs' claim is targeted at DCYF's role under ESSB 5599, *Fields*'s reasoning applies with equal force here. ESSB 5599 only directs DCYF to offer to make referrals on behalf of minors for behavioral health services. But Plaintiffs do not (and cannot) allege that DCYF *compels* their children to obtain behavioral health services. Youths who are offered referrals remain free to accept them or not. Nor do Plaintiffs allege that DCYF has provided behavioral health services directly to their children. At bottom, then, all Plaintiffs object to is their children being given information by DCYF about the availability of behavioral health services, with which they may disagree. But "there is no fundamental right of parents to be the *exclusive* provider of information . . . to their children[.]" *Id.* at 1200.[7]

---

[7] If anything, *Fields* presents a more coercive situation because the children there were compelled to attend school, unlike youths affected by ESSB 5599, who seek out licensed services of their own accord and have the option to reject or accept any referrals offered by DCYF and because the children in *Fields* were considerably younger than Plaintiffs' children. *See Fields*, 427 F.3d at 1201.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Despite conceding that DCYF provides only referrals for voluntary behavioral health services, Plaintiffs try to salvage their claim by arguing that DCYF "authoriz[es]" youths "to engage in 'treatment' not authorized by the parent" and "authoriz[es] others to provide such treatment." FAC ¶ 164. But while Plaintiffs baldly assert that DCYF "authorizes" youths and providers to act, they fail to plausibly allege how simply providing a referral for available services "authorizes" anything. Nor could they, because the authorization to consent to and provide treatment comes by operation of statute, common law, or court order, not from DCYF's prerogative. *See, e.g.*, RCW 71.34.530; *Smith*, 431 P.2d at 723; RCW 13.34.315 (DCYF may only "authorize . . . routine and necessary medical, dental, or mental health care" when "a child is ordered removed from his or her home" by a court).

Attempting to overcome this problem, Plaintiffs bring in RCW 71.34.530. That statute provides, in relevant part: "[a]ny adolescent may request and receive outpatient treatment without the consent of the adolescent's parent." That is, under RCW 71.34.530, teenagers in Washington, including the runaway youths served by ESSB 5599, can see a counselor or other mental health professional without their parents' consent. Although this statute has been the law for nearly 40 years and over 30 other states permit teenagers to consent to outpatient mental health treatment, *supra* Section II.B, Plaintiffs argue that RCW 71.34.530 facially undermines their fundamental rights. Specifically, they argue that *if* DCYF were to refer one of their children to a mental health provider, and *if* the child were to accept that referral and decide to obtain behavioral health services, and *if* the provider were to provide care, the parents' right to refuse their child mental health treatment would be violated because RCW 71.34.530 permits an adolescent to consent to treatment on their own behalf. FAC ¶¶ 243–44.

But who would be violating their purported right? Plaintiffs do not allege that any Defendant actually provides behavioral health services. That is, they don't allege that any Defendant has, will, or even can violate their asserted rights by providing services pursuant to

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

RCW 71.34.530. Nor do they identify any Defendant whose RCW 71.34.530-related conduct can be enjoined by this Court.[8]

Even if State Defendants did provide behavioral health services, Plaintiffs' claim would still fail because RCW 71.34.530 does not—alone, or in conjunction with ESSB 5599—compel any interference with Plaintiffs' relationship with their children. As such, Plaintiffs' claim is indistinguishable from the long line of decisions rejecting similar claims by parents alleging due process violations based on their children's receipt of voluntary health and/or counseling services. *See, e.g.*, *Anspach ex rel. Anspach v. City of Philadelphia, Dep't of Pub. Health*, 503 F.3d 256 (3d Cir. 2007); *Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980); *Curtis v. Sch. Comm. of Falmouth*, 420 Mass. 749 (1995), *cert. denied*, 516 U.S. 1067 (1996); *Reardon v. Midland Cmty. Schs.*, 814 F. Supp. 2d 754 (E.D. Mich. 2011).

*Anspach* is instructive. There, a 16-year-old girl, without her parents' knowledge or consent, requested and received emergency contraception from a clinic run by the City of Philadelphia. A nurse instructed her on how to take the pills, including directing her to take her first dose before she left the clinic. After taking the second dose at home, she became sick and was taken to the emergency room. *Anspach*, 503 F.3d at 259–60. Her parents sued the City, alleging, among other things, that the defendants "violated their constitutional rights of parental guidance by providing [the minor] with medication without parental consent." *Id.* at 260. Both the district court and Third Circuit rejected this claim.

---

[8] Plaintiffs' assertion that "[s]ome of the Parent Plaintiffs have had their parental rights violated under this statute when, for example, at the school's facilitation, their child received treatment from a school counselor to socially transition," FAC ¶ 245, changes nothing. *First*, Plaintiffs fail to allege that any *Defendant* had anything to do with what happened at their children's schools. *Second*, facilitating a minor's social transition is not mental health treatment. *See, e.g.*, *Foote v. Town of Ludlow*, No. 22-30041-MGM, 2022 WL 18356421, at *5 (D. Mass. Dec. 14, 2022) (rejecting argument that school policy aimed at supporting "social transitioning" constituted mental health treatment; "Addressing a person using their preferred name and pronouns simply accords the person the basic level of respect expected in a civil society generally[.]"); *Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trs.*, No. 23-cv-069-SWS, 2023 WL 4297186, at *11 (D. Wyo. June 30, 2023) (plaintiffs "failed to make a showing the Preferred Name Policy was used as a means of treatment for any relevant diagnosed medical or mental health condition[ ]").

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

As the Court of Appeals explained, "[c]ourts have recognized the parental liberty interest only where the behavior of the state actor compelled interference in the parent-child relationship." *Id.* at 262. But this necessary element was lacking because no one forced the youth to take medication or "prevented [her] from calling her parents before she took the pills she had requested." *Id.* at 264–65. Although the parents alleged that the City health clinic "purposefully seeks to separate their children from their parents in the distribution of these pills," the Court found these assertions lacking because "the Complaint [wa]s completely devoid of any allegations that Center personnel told [the youth] not to consult her parents before taking the medication." *Id.* at 267. In light of this, plaintiffs could not show "that the state injected itself into the Anspachs' private familial sphere as required for a constitutional violation." *Id.*

To similar effect is *Doe v. Irwin*. 615 F.2d 1162 (6th Cir. 1980). *Doe*, like *Anspach*, involved a state-run clinic providing contraceptives to minors without parental consent. Presaging *Anspach*, the Sixth Circuit in *Doe* rejected plaintiffs' parental rights claim because:

> The State of Michigan, acting through the Center and defendants, has imposed no compulsory requirements or prohibitions which affect rights of the plaintiffs. It has merely established a voluntary birth control clinic. There is no requirement that the children of the plaintiffs avail themselves of the services offered by the Center and no prohibition against the plaintiffs' participating in decisions of their minor children on issues of sexual activity and birth control. The plaintiffs remain free to exercise their traditional care, custody and control over their unemancipated children.

*Id.* at 1168; *see also Curtis*, 420 Mass. at 757–58 ("We discern no coercive burden on the plaintiffs' parental liberties" from a program making condoms voluntarily available in high schools because "the students are free to decline to participate in the program.").

*Reardon v. Midland Community Schools* likewise rejected a due process claim that school employees violated parents' rights by providing "counseling, advice, financial assistance, and companionship" to their minor daughter regarding her decision to leave home and move in with her boyfriend. 814 F. Supp. 2d at 769. As the court explained, "[e]very Supreme Court case discussing fundamental rights of parents with respect to their children address a state law or

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT NO. 3:23-CV-05736-DGE

19

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  regulation that requires children to engage in an activity their parents do not want them to engage

2  in, or prohibits children from engaging in an activity their parents do want them to engage in."

3  *Id.* But the voluntary counseling provided by school employees did neither. *Id.* at 771–72.

4  ("[Defendants] undertook the actions they did to help S. address a challenging situation by

5  providing guidance and support. . . . Nothing in the Constitution prohibits school teachers or

6  counselors from counseling students, nor does it require that the teachers and counselors obtain

7  parental consent about the character of their counseling in the context of the facts alleged in this

8  instance.").

9  The critical element missing from each of these cases is the same one missing here:

10  coercion. At most, RCW 71.34.530 empowers youths to obtain outpatient behavioral health

11  services. It does not, alone or in conjunction with ESSB 5599, compel any adolescent to receive

12  mental health services, or prohibit any adolescent from involving their parents in their

13  decisionmaking. As such, ESSB 5599 and/or RCW 71.34.530 do not violate Plaintiffs' due

14  process rights as parents in any way.

15  The lack of coercion also distinguishes this case from cases Plaintiffs cite in their FAC

16  (¶ 159). *See, e.g.*, *Wallis v. Spencer*, 202 F.3d 1126, 1131 (9th Cir. 2000) ("Escondido police

17  officers, evidently acting on the basis of a non-existent court order, seized the children, aged two

18  and five, placed them in a county-run institution, and several days later, without obtaining

19  judicial authorization and without notifying their parents, took them to a hospital for the

20  performance of highly intrusive anal and vaginal physical examinations."); *Kanuszewski v.*

21  *Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 420 (6th Cir. 2019) (challenging state

22  practice of retaining and storing infant blood samples "indefinitely for further use by the state or

23  third parties" without informed parental consent). The other case they cite, *Jordan v. D.C.*,

24  involved a parent's challenge to the forced medication of her daughter at a government-run

25  psychiatric facility. 161 F. Supp. 3d 45, 62 (D.D.C. 2016). Moreover, on appeal, the D.C. Circuit

26  affirmed on the alternative ground that "the [defendants'] administration of medication without

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

20

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  obtaining consent from Y.F.'s mother . . . [di]d not violate due process" because it "did not

2  amount to a substantial departure from accepted professional judgment, or to deliberate

3  indifference." *Jordan v. D.C.*, 686 F. App'x 3, 4 (D.C. Cir. 2017) (Mem.). Plaintiffs here make

4  no argument that any hypothetical behavioral health service provided under ESSB 5599 and/or

5  RCW 71.34.530 violates Washington's standard of care or reflects deliberate indifference.[9]

6       Finally, even if Plaintiffs could show that they had a fundamental right at stake in their

7  teenager's (hypothetical future) choice to accept a DCYF referral and then voluntarily obtain

8  outpatient mental health services without their consent, they still could not meet the high burden

9  of establishing that either ESSB 5599 or RCW 71.34.530 "is unconstitutional in all of its

10 applications," as is required for their facial challenge. *Wash. State Grange*, 552 U.S. at 449. This

11 is because the "behavioral health services" to which DCYF may provide referrals under

12 ESSB 5599 include not only "mental health services," but also "substance use disorder treatment

13 services." RCW 71.24.025(11). As a result, even if referrals to outpatient mental health services

14 arguably infringed parents' rights—which, again, they do not—Plaintiffs' facial challenge to the

15 statute as a whole would still fail.

16       **b.     ESSB 5599 does not strip parents of custody over their children**

17       Plaintiffs' purported custody claim fares no better. Their custody claim turns on their

18 assertion that ESSB 5599 "den[ies] to parents . . . information about the location of their

19 children, as well as the custody and control of their children." FAC ¶ 174. This assertion is

20 unmoored from what the law actually does. ESSB 5599 does not change the law about

21 information DCYF provides to parents.

22

23

24  [9] *Parham v. J. R.*, 442 U.S. 584 (1979), which Plaintiffs' complaint cites a few times, is entirely inapposite. *Parham* dealt with *minors*' procedural due process rights when their parents tried to civilly commit them (and

25  concluded minors *did* have due process rights in that circumstance). *Id.* at 606. Moreover, the Supreme Court has rejected subsequent efforts to transform *Parham*'s "decision which allowed a State to rely on family decisionmaking

26  into a constitutional requirement that the State recognize such decisionmaking." *Cruzan ex rel. Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 286 (1990).

DEFENDANTS' MOTION TO DISMISS          21          ATTORNEY GENERAL OF WASHINGTON
PLAINTIFFS' FIRST AMENDED                          1125 Washington Street SE
COMPLAINT                                          PO Box 40100
NO. 3:23-CV-05736-DGE                              Olympia, WA 98504-0100
                                                   (360) 753-6200

1       RCW 13.32A.082(3)(a) straightforwardly requires DCYF to make a good faith attempt

2   to notify parents *whenever* it receives a report of a runaway youth (i.e., "a report under subsection

3   (1) of this section"). This was the law before ESSB 5599, and it remains so after. Plaintiffs

4   disagree, but their tendentious reading of the statute—relying on a statement from a legislative

5   staffer and inapplicable canons of statutory interpretation (FAC ¶¶ 85–89)—cannot overcome

6   the plain text of the statute. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 43 P.3d 4, 9–10

7   (Wash. 2002) ("[I]f the statute's meaning is plain on its face, then the court must give effect to

8   that plain meaning as an expression of legislative intent.").

9       Moreover, as Plaintiffs admit, their reading of the statute is contrary to DCYF's own

10  understanding and the policy guidance DCYF has given its employees. *See* FAC ¶¶ 91–94

11  (discussing DCYF Policy Memo: Changes to 3100 (July 21, 2023) (Policy Memo)). The Policy

12  Memo requires DCYF employees to "[m]ake a good faith attempt to contact the youth's parent

13  or legal guardian to offer [family reunification services] to resolve the conflict and accomplish

14  a reunification of the family," and to "[d]ocument" the steps they took to do so. Policy Memo

15  (Sepe Decl., Ex. G). The Policy Memo directs DCYF employees to "[c]ontact the parents or

16  legal guardians as outlined in the current FRS policy." *Id.* That policy provides further direction

17  on what DCYF employees "must" do, including that "[c]aseworkers must . . . [c]ontact the

18  family within twenty-four hours of being assigned the case, excluding weekends and holidays,

19  to schedule an interview and assessment." DCYF Policy 3100 (Sepe Decl., Ex. H).

20      The unambiguous notice requirement of ESSB 5599 is buttressed by other notice

21  requirements throughout RCW 13.32A.082 and related laws. For example, Section 3(b)

22  specifically requires that when a runaway youth is seeking gender-affirming care, DCYF must

23  "[o]ffer services designed to . . . accomplish a reunification of the family," which involves

24  DCYF attempting to notify the minor's parents. Moreover, RCW 13.32A.082(1)(b)(ii) continues

25  to require shelters to check the Washington State Patrol's database of missing children reports

26  "[a]t least once every eight hours," and to notify DCYF "immediately" if a minor in shelter has

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

22

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   been reported missing—regardless of whether that minor is seeking gender-affirming care.

2   Further, under RCW 13.50.100(7)(a), DCYF may only withhold information about a minor's

3   whereabouts and condition if the agency determines "that release of this information is likely to

4   cause severe psychological or physical harm to the juvenile[.]" Thus, far from undermining

5   parents' rights to receive information about their children, ESSB 5599 merely changes who

6   notifies the parents—DCYF as opposed to a shelter—which gives DCYF an opportunity to offer

7   services to vulnerable transgender youths and their families in order to hopefully begin a

8   reunification process before those youths disappear back onto the streets. And SHB 1406 simply

9   imposes a deadline by which DCYF must offer these services.

10          Plaintiffs' back-up argument that ESSB 5599 and SHB 1406 "change the timing of the

11   notice to parents in a way that substantially impairs parental rights" is equally flawed. FAC ¶ 96.

12   First and foremost, RCW 13.32A.082 explicitly provides that "[n]othing in this section prohibits

13   any person, unlicensed youth shelter, or runaway and homeless youth program from *immediately*

14   reporting the identity and location of any minor who is away from a lawfully prescribed

15   residence or home without parental permission more promptly than required under this section."

16   (emphasis added). Because the statute explicitly permits *immediate* reporting, Plaintiffs' facial

17   challenge necessarily fails.

18          Even putting aside that fatal flaw, Plaintiffs still cannot state a claim for relief. SHB 1406

19   provides that DCYF "shall offer [family reunification] services . . . as soon as possible, but no

20   later than three days, excluding weekends and holidays, following the receipt of a report" from

21   a shelter. SHB 1406, § 2(3); FAC ¶ 83. Prior to the passage of SHB 1406, there was *no* deadline

22   for contacting families to provide family reunification services. But, as noted above, Policy 3100

23   requires DCYF caseworkers to contact the minor's family "to schedule an interview and

24   assessment" "within twenty-four hours of being assigned the case, excluding weekends and

25   holidays." The statutory change via SHB 1406 is a backstop, providing further assurance that

26

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

23

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  families will be offered services as quickly as possible. In other words, this provision adds a

2  statutory requirement that services be offered within 72 hours.

3          Plaintiffs offer a hypothetical example to show that under SHB 1406's timing

4  requirements, parents whose children are seeking protected healthcare services might not receive

5  notice as soon as other parents. FAC ¶ 99. But no Plaintiff has actually alleged such a delay. And

6  a single hypothetical cannot carry a facial challenge. *See Wash. State Grange*, 552 U.S. at 449.

7          Finally, Plaintiffs are flatly incorrect that ESSB 5599 "den[ies] to parents . . . custody

8  and control of their children." FAC ¶ 174. Nothing in ESSB 5599 authorizes DCYF to take

9  custody of a minor, with or without a parent's consent, simply because the minor seeks gender-

10 affirming care. *See generally* ESSB 5599. Plaintiffs seem to suggest that DCYF takes custody

11 of a minor whenever a licensed shelter reports the minor's presence to DCYF. *See, e.g.*,

12 FAC ¶ 112 (alleging that "nothing in [ESSB 5599] requires the Department to return the child").

13 But that is not the case. Rather, DCYF may only take custody of a minor where a court finds

14 "that there are reasonable grounds to believe that removal is necessary to prevent imminent

15 physical harm to the child due to child abuse or neglect." RCW 13.34.050; *see* RCW

16 13.34.060(1) (setting 72-hour period minor may be taken into custody under RCW 13.34.050

17 without further court order). Just because DCYF receives a report about a minor from a licensed

18 shelter does not mean that a parent's custodial rights are somehow impeded. A parent remains

19 free to pick up their child from a shelter at any time and the youth remains free to return home.

20         In short, *none* of the key allegations are true. Their "custody" claim should be dismissed.

21         **c.      ESSB 5599 does not violate Plaintiffs' substantive due process rights**

22         Stripping away Plaintiffs' false characterizations, the actual law plainly complies with

23 due process. ESSB 5599 simply directs shelters to report to DCYF when adolescents are seeking

24 protected health care and requires DCYF to offer services to adolescents and their families

25 (which they can accept or reject). This effort to make services available to transgender youths

26 and their families does not unduly interfere with any parent's right to parent their children.

1    Because, the challenged statutes do not implicate any of Plaintiffs' fundamental rights as

2    parents, rational basis review, not strict scrutiny, applies. *Washington v. Glucksberg*, 521 U.S.

3    702, 728 (1997). The statutes easily satisfy this "highly deferential" standard. *Erotic Serv.*

4    *Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 457, *as amended*, 881 F.3d 792

5    (9th Cir. 2018) ("Rational basis review is highly deferential to the government, allowing any

6    conceivable rational basis to suffice."); *see also Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320

7    (1993) (under rational basis review, "[a] statute is presumed constitutional, and the burden is on

8    the one attacking the legislative arrangement to negat[e] every conceivable basis which might

9    support it" (cleaned up)).

10    The Legislature set out ESSB 5599's purpose after finding that "[y]outh seeking certain

11    medical services"—i.e., gender-affirming and/or reproductive care—"are especially at risk and

12    vulnerable," and "[h]omelessness amongst transgender youth can further endanger an already

13    at-risk population." ESSB 5599, § 1.

14    Addressing this problem is plainly a legitimate government interest. ESSB 5599 does

15    exactly that by giving DCYF an opportunity to connect with these particularly vulnerable

16    adolescents, refer them to outpatient behavioral health services, and work to reunify families—

17    before youth slip back onto the streets. ESSB 5599 provides "a safe opportunity and possibility

18    for young people to connect with medical and mental health care providers who provide a

19    standard of care and treatment that has been found safe and effective by every major medical

20    body, including the American Academy of Pediatrics and the American Medical Association."

21    H.B. Rep. on ESSB 5599, at 5 (Sepe Decl., Ex. C). Access to these services can be life-changing

22    for youth, as LGBTQ+ youth are four times more likely to attempt suicide than their cisgender,

23    heterosexual peers.[10] Kinzi Sparks, *National Estimate of LGBTQ Youth Seriously Considering*

24    *Suicide*, The Trevor Project (June 27, 2019),  https://www.thetrevorproject.org/blog/national-

25

26    _____
       [10] And of course, SHB 1406 and RCW 71.34.530 respectively provide that families will receive services
       in a timely fashion and that youths have access to mental health treatment. These are doubtlessly rational ends.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

25

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   estimate-of-lgbtq-youth-seriously-considering-suicide/. Indeed, "one in three transgender youth

2   report attempting suicide." ESSB 5599, § 1. Providing greater access to appropriate behavioral

3   health services, while working to reunify families, is undoubtedly a rational policy response.

4   Plaintiffs' due process claims should therefore be dismissed.

5         **2.**     **Plaintiffs' free exercise claim fails**

6        Plaintiffs also claim the challenged laws violate their right to the free exercise of religion

7   under the First Amendment because it "violat[es] Plaintiffs' right to raise their children

8   according to the parents' faith." FAC ¶ 197. RCW 13.32A.082(3) does no such thing.

9        To state a claim under the free exercise clause, a plaintiff must show that a government

10  action has burdened the exercise of a sincerely held religious belief. *Fulton v. City of*

11  *Philadelphia*, 141 S. Ct. 1868, 1876 (2021). Whether a plaintiff states a viable free exercise

12  claim depends on the level of scrutiny to be employed by the court. *See Emp. Div., Dep't of*

13  *Hum. Res. of Or. v. Smith*, 494 U.S. 872 (1990). Neutral laws of general applicability that only

14  incidentally burden religion are not subject to strict scrutiny; instead, they receive rational basis

15  review. *Fulton*, 141 S. Ct. at 1876.

16        Here, Plaintiffs allege RCW 13.32A.082(3) infringes on "a hybrid right of free exercise

17  and parental rights" and strict scrutiny should apply FAC ¶ 185. But, the Ninth Circuit has

18  repeatedly questioned whether a "hybrid" constitutional rights claim even exists. *See Parents for*

19  *Privacy v. Barr*, 949 F.3d 1210, 1237–38 (9th Cir. 2020) (doubting whether hybrid rights claim

20  exists and whether strict scrutiny would be required if it does); *see also Jacobs v. Clark Cnty.*

21  *Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th Cir. 2008) (describing widespread criticism of the hybrid

22  rights theory). But even if a hybrid rights claim did exist, RCW 13.32A.082(3) does not infringe

23  on parental rights or implicate any other constitutional protection at all. As discussed above, the

24  law does not "keep the child away from parents," as Plaintiffs allege (FAC ¶ 182), nor does a

25  requirement that DCYF offer runaway youth family reunification services or referrals for

26  outpatient behavioral health services interfere with any parents' free exercise rights—even in

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

26

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

conjunction with RCW 71.34.530. Again, there are no compelled services. And parents are free to pick up their child from a shelter regardless of whether they accept DCYF's offer of conflict and reconciliation services or their children accept referrals for outpatient behavioral health treatment. *Cf. Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972) (state was prevented from compelling Amish parents to violate their religious beliefs "under threat of criminal sanction" and enroll their children in school until the age of 16). A hybrid rights claim cobbled together from multiple failing constitutional claims does not trigger strict scrutiny. *See Parents for Privacy*, 949 F.3d at 1237–38 (rejecting plaintiffs' hybrid rights challenge to a school district's neutral and generally applicable policy of allowing transgender students to use the bathroom that matched their gender identity).

Simply put, the challenged laws do not, in letter or spirit, regulate the way in which Plaintiffs (or any one) practice their religions. So, as a neutral and generally applicable law, RCW 13.32A.082(3) need only survive rational-basis review, i.e., it must be rationally related to a legitimate governmental purpose. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127–28 (9th Cir. 2009). As explained above, it plainly does. RCW 13.32A.082(3)'s offer of services to youth seeking protected health care services and their families is rationally related to the legitimate purpose of protecting the health and safety of runaway youth. *Cf. Parents for Privacy*, 949 F.3d at 1238 (concluding that "protecting student safety and well-being" is a legitimate governmental purpose). Plaintiffs' free exercise claim must be dismissed.

### 3. Plaintiffs' free speech claims fail

Plaintiffs next rely on another contrived interpretation of the challenged laws to argue that they both chill and compel speech in violation of the First Amendment. The laws do neither.

As an initial matter, RCW 13.32A.082(3) plainly does not chill parents from using their child's birth name or telling their children that they are the sex they were assigned at birth, let alone penalize parents for doing so. *Contra* FAC ¶¶ 203, 210. As discussed above, the law does not regulate parents or their relationship with their children at all. ESSB 5599 only changed

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

27

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    licensed shelters and *DCYF*'*s* obligations—in other words, DCYF must now offer outpatient

2    behavioral health treatment referrals and conflict resolution services, in addition to notifying

3    parents when a shelter reports to DCYF that a minor is seeking the shelters' services. Plaintiffs

4    suggest that the law nevertheless chills parents' free speech even if it "fall[s] short of a direct

5    prohibition." *Id*. But a government action that is not a direct prohibition must still be regulatory,

6    proscriptive, or compulsory in nature to implicate the First Amendment. *See Vernon v. City of*

7    *Los Angeles*, 27 F.3d 1385 (9th Cir. 1994); *Laird v. Tatum*, 408 U.S. 1, 11 (1972) (concluding

8    an alleged chilling effect cannot "arise merely from the individual's knowledge that a

9    governmental agency was engaged in certain activities"). The challenged laws do not fall within

10    these categories. They do not restrict, regulate, or interfere with parents' views on sex or gender

11    identity, nor do they punish or coerce parents in any way if they continue to use their child's

12    birth name or pronouns for the sex assigned at birth. Of course, parents might choose not to use

13    their child's birth name or discuss their views on gender identity to minimize familial conflict,

14    *see* FAC ¶ 212, but that decision is not traceable to anything in RCW 13.32A.082(3).

15          To the extent Plaintiffs argue the challenged laws "incentivize [children] to run away"

16    and receive gender-affirming care, that is flatly wrong. FAC ¶ 132. Again, regardless of whether

17    a minor has run away, the challenged laws do not change how or whether that minor is able to

18    access medical care. And, as discussed above, RCW 13.32A.082(3) has no effect on parents'

19    custody of their children. Moreover, under longstanding state law, an adolescent need not run

20    away in order to be able to obtain outpatient mental health care without parental consent.

21    RCW 71.34.530.

22          Finally, the challenged laws do not compel any speech. *Contra* FAC ¶¶ 207, 211. Nothing

23    in the law's plain text suggests that DCYF will require the parents to say or do *anything* to

24    reunify with their children, let alone that they use pronouns aligning with their child's gender

25    identity or accept gender-affirming care for their child. *Cf. Boy Scouts of America v. Dale*, 530

26    U.S. 640, 642 (2000) (concluding First Amendment is violated when state law would require

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

28

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  Boy Scouts to accept an openly gay member). RCW 13.32A.082(3)(b), which requires DCYF to

2  "offer services designed to resolve the conflict and accomplish a reunification of the family,"

3  simply duplicates what DCYF does when it receives notice about a youth receiving services at a

4  shelter. *Compare* RCW 13.32A.082(3)(a), *with* RCW 13.32A.082(3)(b) (both directing DCYF

5  to "offer services designed to resolve the conflict and accomplish a reunification of the family").

6  Because subsection 3(b) does not require the parent to accept the offer of reunification services

7  as a condition of their child returning home, there can be no claim that ESSB 5599 and SHB 1406

8  compel parents to say any "preferred" message.

9      **4.      Plaintiffs' procedural due process claim fails**

10     A procedural due process claim has two distinct elements: (1) deprivation of a

11  constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

12  protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (1998).

13  Plaintiffs' procedural due process claim fails at the first element.

14     While parents' rights to make decisions concerning the care, custody, and control of their

15  children is certainly a liberty interest, *see Troxel*, 530 U.S. at 66, the challenged laws do not

16  interfere with or burden that interest. Nor do the laws deprive parents of their right to raise their

17  children in their faith tradition. *Contra* FAC ¶ 225. Nowhere do the challenged laws instruct or

18  allow the State to take custody of runaway youth or require parents to use particular pronouns

19  or provide their children access to gender affirming care. Nor do ESSB 5599 or SHB 1406 direct

20  DCYF to withhold information from parents about their child's whereabouts. Plaintiffs suggest

21  SHB 1406 somehow prolongs the separation between a parent and their child, but SHB 1406's

22  requirement that family reunification services be provided within three days simply sets a

23  statutory deadline where there previously was none. And, RCW 13.32A.082(4) explicitly states

24  that "[n]othing in this section prohibits any person, unlicensed youth shelter, or runaway and

25  homeless youth program from *immediately* reporting the identity and location of any minor who

26  is away from a lawfully prescribed residence or home without parental permission more

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

29

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

promptly than required under this section." (emphasis added). Again, ESSB 5599 simply shifts the general responsibility of who notifies parents of their child's whereabouts from shelters to DCYF. *See* ESSB 5599, § 3. As Plaintiffs themselves observed, DCYF has already implemented policies to ensure DCYF makes a good-faith attempt to contact the youth's parent or legal guardian. *See* Policy Memo. In short, no due process or "individualized assessment" is necessary "to see if there is a compelling reason to withhold information about the child's whereabouts," *see* FAC ¶ 226, because such information is not withheld. Because the challenged laws do not deprive Plaintiffs of any liberty interests, Plaintiffs' procedural due process claim should be dismissed.

### 5.    Plaintiffs' vagueness claim fails

"'A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement.'" *Hum. Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1019 (9th Cir. 2010) (citation omitted). If a law imposes neither regulation of nor sanction for conduct, however, then it is outside the scope of the void-for-vagueness doctrine. *See United States v. David H.*, 29 F.3d 489, 491 (9th Cir. 1994) (vagueness did not apply to federal procedure that mandated transfer of juvenile cases to adult status); *see also United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1130 (7th Cir. 1984) ("[Void-for-vagueness] cases have one thing in common: a sanction . . . for allegedly engaging in certain conduct proscribed by a statute. It is the definition of that proscribed or regulated conduct which gives rise to . . . notice concerns . . . .").

Here, ESSB 5599 and SHB 1406 do not prohibit or sanction any conduct. They merely change the reporting requirements for licensed youth programs sheltering a minor seeking protected health care services and require DCYF to timely contact families and offer referrals for behavioral health services to youth. Plaintiffs argue the law provides DCYF actors with "unfettered discretion" to require parents use particular pronouns or consent to gender-affirming care in order to reunify with their child. FAC ¶¶ 233–34. But, again, nothing in the law's plain

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

30

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    text gives DCYF the authority to require parents *do anything* to reunify with their runaway

2    children. Because the challenged laws do not regulate parents' conduct in any way, the

3    due process considerations underlying Plaintiffs' void-for-vagueness challenge have no

4    application here.

### IV.    CONCLUSION

The Court should dismiss Plaintiffs' First Amended Complaint.

DATED this 15th day of December 2023.

> ROBERT W. FERGUSON
> *Attorney General*
>
> *s/ Cristina Sepe*
> CRISTINA SEPE, WSBA 53609
> MARSHA CHIEN, WSBA 47020
> *Deputy Solicitors General*
> 1125 Washington Street SE
> PO Box 40100
> Olympia, WA 98504-0100
> (360) 753-6200
> Cristina.Sepe@atg.wa.gov
> Marsha.Chien@atg.wa.gov
>
> ANDREW R.W. HUGHES, WSBA 49515
> LAURYN K. FRAAS, WSBA 53238
> *Assistant Attorneys General*
> *Complex Litigation Division*
> 800 Fifth Avenue, Suite 2000
> Seattle, WA 98104
> (206) 464-7744
> Andrew.Hughes@atg.wa.gov
> Lauryn.Fraas@atg.wa.gov
>
> *Counsel for Defendants Jay Inslee,*
> *Robert Ferguson, and Ross Hunter*
>
> I certify that this memorandum contains 10,987
> words, in compliance with the Court's order
> expanding the word limit. *See* Dkt. #36.

DEFENDANTS' MOTION TO DISMISS      31      ATTORNEY GENERAL OF WASHINGTON
PLAINTIFFS' FIRST AMENDED                        1125 Washington Street SE
COMPLAINT                                         PO Box 40100
NO. 3:23-CV-05736-DGE                       Olympia, WA 98504-0100
                                             (360) 753-6200

1

**CERTIFICATE OF SERVICE**

2

I hereby declare that on this day I caused the foregoing document to be electronically

3

filed with the Clerk of the Court using the Court's CM/ECF System, which will serve a copy of

4

this document upon all counsel of record.

5

DATED this 15th day of December, 2023, at Olympia, Washington.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*s/ Leena Vanderwood*
Leena Vanderwood
*Paralegal*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Leena.Vanderwood@atg.wa.gov

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

32

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200