HON. JUDGE DAVID G. ESTUDILLO

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| International Partners For Ethical Care, Inc., Advocates Protecting Children, Parents 1A, 1B, 2A, 2B, 3A, 3B, 4A, 4B, 5A, and 5B,<br><br>Plaintiffs,<br><br>v.<br><br>Jay Inslee, Governor of Washington, in his official capacity; Robert Ferguson, Attorney General of Washington, in his official capacity; and Ross Hunter, Secretary of the Washington Department of Children, Youth, and Families, in his official capacity,<br><br>Defendants. | No. 3:23-cv-05736-DGE<br><br>BRIEF OF *AMICUS CURIAE* LEGAL COUNSEL FOR YOUTH AND CHILDREN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>NOTE ON MOTION CALENDAR: February 2, 2024 |

## I. INTRODUCTION

*Amicus Curiae* Legal Counsel for Youth and Children ("LCYC") requests the Court grant the State's Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 37). Plaintiffs' lawsuit flows from a misapprehension of the challenged legislation. Properly understood, this legislation imposes no injury that could confer Article III standing on Plaintiffs or infringe on their Constitutional rights as parents or associations representing parents.

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 1

**Ruiz & Smart LLP**
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

## II. INTEREST OF *AMICUS CURIAE*

LCYC's mission is to protect the interests and safety of youth in Washington by advancing their legal rights. LCYC operates on the premise that young people are neither the possessions of parents nor of the state. One critical way in which LCYC effects its mission is its Youth Homeless Programs. Young people aged 12-24 who are experiencing or at risk of housing instability can be eligible for LCYC's free civil legal services. Young people served through this program include not just those experiencing homelessness but those who are on the median: couch surfing, struggling to access emergency shelter, temporarily living with friends or family, facing eviction, or feeling unsafe or unwelcome at home. It is these youth whose interests are protected by the legislation Plaintiffs challenge in this lawsuit.

## III. LEGAL BACKGROUND

The Court need not accept the Plaintiffs' legal conclusions as true at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868, 884 (2009). Because correcting Plaintiffs' legal misapprehensions helps bring the issues presented in the State's Motion to Dismiss into focus, LCYC details the legal background below.

**A.  The law recognizes the rights of youth, the importance of combatting youth homelessness, and the primacy of family reunification.**

**1.  The Court must give effect to youth and children's fundamental rights.**

Plaintiffs' allegations overlook the well-established rights of the youth and children sought to be protected by the challenged legislation. Youth and children are property of neither their parents nor the State. They "are 'persons' under our Constitution." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511, 89 S. Ct. 733, 739, 21 L.Ed.2d 731, 740 (1969). They are entitled to Constitutional protections. *See In re Gault*, 387 U.S. 1, 13, 87 S. Ct. 1428,

1436, 18 L.Ed.2d 527, 538 (1967) (explaining that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone.") (citations omitted). Simply put: while they may have their rights curtailed by parents or the State when unable to act in their own best interests, "[c]hildren are no longer considered property." Anne C. Dailey and Laura A. Rosenbury, *The New Law of the Child*, 127 Yale L.J. 1448, 1460 (Apr. 2018). Furthermore, "recognition of children's autonomy comes into play most often with respect to adolescent decision making outside of the home[.]" *Id*. at 1461. Thus, Washington recognizes that youth have a fundamental right to "conditions of basic nurture" as well as "physical and mental health, and safety." RCW 13.34.020.

### 2. The Court should take cognizance of the State's interest—shared by LCYC—in combatting youth homelessness.

As LCYC knows firsthand, the harms inflicted on homeless youth give the State a significant interest in protecting the family unit and preventing homelessness among youth and young adults. In creating the Office of Homeless Youth Prevention and Protection Programs, the Washington State Legislature declared preventing these harms is an important government interest:

> [E]very night thousands of homeless youth in Washington go to sleep without the safety, stability, and support of a family or a home. This population is exposed to an increased level of violence, human trafficking, and exploitation resulting in a higher incidence of substance abuse, illness, and death. The prevention and reduction of youth and young adult homelessness and protection of homeless youth is of key concern to the state.

RCW 43.330.700(1). Thus, Washington State has made a legal commitment to protecting the health and safety of youth and supporting the family unit. That commitment permeates the State's legal framework for combatting youth homelessness described below.

### 3. The family unit's primacy is well-recognized throughout Washington State's legal framework for combatting youth homelessness.

Plaintiffs posture this litigation as a defense of the family unit. But that interest already permeates the statutory scheme protecting the rights of youth and children and is unthreatened by the challenged legislation. The statutory provisions protecting youth at issue here include:

- the Family Reconciliation Act (codified at Chapter 13.32A RCW);
- the Homeless Housing and Assistance Act (codified at Chapter 43.185C RCW);
- the Homeless Youth Prevention and Protection Act (codified at RCW 43.330.700-726); and
- Chapter 74.15 RCW, "Care of Children, Expectant Mothers, Persons with Developmental Disabilities.

These are the statutory provisions amended by the bills Plaintiffs challenge: Substitute House Bill 1406 ("SHB 1406") and Engrossed Substitute Senate Bill 5599 ("ESSB 5599").[1]

This carefully integrated statutory scheme balances preventing youth homelessness, protecting parental rights, and safeguarding the family unit by and reuniting homeless youth with their parents:

- The Family Reconciliation Act presumes that "the experience and maturity of parents make them better qualified to establish guidelines beneficial to and protective of their children." RCW 13.32A.010. That Act requires parents be notified and family reconciliation services be offered "as soon as possible," and no later than three days, after youth report to a shelter. RCW 13.32A.082.

---

[1] Annotated copies of SHB 1406 and ESSB 5599 are included as Appendix I hereto.

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 4

RUIZ & SMART LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

- The Homeless Housing and Assistance Act imposes a "[d]uty to inform parents" when crisis residential shelters admit homeless children. RCW 43.185C.280.
- The Homeless Youth Prevention and Protection Act reflects the Legislature's intent to prioritize "family reconciliation" when supporting homeless youth, leaving dependency (i.e., the first step in the long process that might conclude with terminating parental rights, *see infra* at § III.D) as a last resort when reconciliation is not viable. RCW 43.330.700(1).[2]
- RCW 74.15.020(2)(o)(ii)(A) compels the Department of Children, Youth, and Families ("Department") to make a good faith attempt to notify the parent of any child seeking or receiving protected health care services at a host home program within 72 hours.

**B.  SHB 1406 fixes a legislative flaw needlessly keeping youth on streets.**

Before the Legislature passed SHB 1406, the Family Reconciliation Act contained a loophole denying some youth shelter access even when their parents refused to permit them to return to the family home. When a youth sought assistance from a homeless shelter prior to SHB 1406, the shelter was legally obligated to discharge that youth—forced to send them back to the streets—unless it could obtain the parent's[3] affirmative consent to the youth remaining in the shelter. That is because the version of RCW 13.32A.082 effective before SHB 1406 contained no provision allowing youth to directly authorize shelters to care for them—only the parents

---

[2] *See also, e.g.*, RCW 43.330.700(5)(b) (mandating services supporting reuniting homeless youth with immediate family and reserving dependency only "[w]hen reunification is not possible[.]")

[3] Some statutory provisions refer to both parents and legal guardians. LCYC uses "parents" for brevity.

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 5

Ruiz & Smart LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

could provide that consent. *See* Appendix I, SHB 1406 at 2:17-30 (pre-amendment language). The absence of such a provision might even have caused shelters to fear criminal liability for unlawful harboring of a minor had they permitted the youth to remain without parental consent. RCW 13.32A.080(1)(a).

Thus, previously, if a shelter could not make contact with the parents (e.g., the parents do not return phone calls or their phone number is disconnected), that shelter could not permit the youth to remain. And, if the shelter did make contact, the parents could refuse consent for the youth to stay at the shelter while also refusing to permit the youth to return home.[4] Either way, the youth remained on the streets. In that event, the shelter had few options to help them. It could contact the police to request they take the minor into productive custody under RCW 26.44.050. But that would require grounds to report abuse or neglect. *Id*. And this would prompt Department involvement and could start the youth down the arduous road to a dependency petition seeking custody of the child—an outcome incompatible with family reconciliation. *See infra*, § III.

SHB 1406 closes this loophole. As amended, RCW 13.32A.082(1)(b)(i) provides: "A minor may provide authorization to remain" in a shelter for up to 90 days if the parents cannot be contacted or refuse to permit the youth to come home. When that happens, the shelter must notify the Department which must promptly contact the parents and seek to reconcile the family. *Id*. at § (3).[5]

---

[4] This is an outcome with which LCYC is, unfortunately, all too familiar given the high degree of intrafamily conflict characterizing the circumstances typical of youth homelessness.

[5] Providing: "When the department receives a report under subsection (1) of this section, it shall make a good faith attempt to notify the parent that a report has been received and offer services to the youth and

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 6

RUIZ & SMART LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

The Department's administrative guidance reflects this:



Declaration of Erin Lovell, Ex. A at 7.[6] Thus, SHB 1406 not only combats youth homelessness but furthers the interest Plaintiffs claim to seek to advance in this lawsuit: uplifting the family unit.

---

the family designed to resolve the conflict, including offering family reconciliation services, and accomplish a reunification of the family. The department shall offer services under this subsection as soon as possible, but no later than three days, excluding weekends and holidays, following the receipt of a report under subsection (1) of this section.".

[6] The Court may consider this guidance because Plaintiffs incorporate it into their pleadings. Dkt. No. 34 at ¶ 93; *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (citations omitted) (ruling court may consider documents referred to in a complaint on a motion to dismiss). Further, the Court may take judicial notice of "agency manuals, rules and policies not subject to a reasonable dispute." *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 139 n.2 (N.D. Cal. 2015).

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 7

RUIZ & SMART LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

**C.    ESSB 5599 promotes reconciliation among parents and youth seeking gender- or reproductive-related healthcare by adjusting how—not whether—parents receive notice their child reported to a shelter.**

The Legislature enacted ESSB 5599 to combat the heightened risk of homelessness afflicting youth who are "seeking or receiving…gender affirming treatment [or] reproductive health care services."[7] Appendix I, ESSB 5599 at pp. 1 and 3. As the State's brief aptly details, Dkt. No. 37 at 11-12, youth seeking gender- and reproductive-related healthcare are at greater risk of experiencing homelessness. Similar to SHB 1406, ESSB 5599 solves this problem in large part by mandating the Department seek to reconcile these youth with their family when the youth present at a shelter or host home program. The only meaningful change in this process ESSB 5599 works is altering the mechanism by which reconciliation efforts are accomplished.

The Family Reconciliation Act provides the framework for these efforts by mandating a shelter serving youth promptly notify the parents. RCW 13.32A.082(1)(b)(i). If the shelter has "compelling reasons" not to notify the parents directly, it instead notifies the Department. *Id*. The Department must then notify the parent "as soon as possible" and work to reunify the youth with their parents. *Id*. § (3)(a).

ESSB 5599's only material change is addressing the increased likelihood of homelessness among youth "seeking or receiving…gender affirming treatment [or] reproductive health care services"[8]—and the commensurate increased risk of harm to those youth if they remain on the streets—by making that status a "compelling reason" for the shelter or host home

---

[7] LCYC emphasizes that ESSB 5999's precise language matters. Not all persons identifying as transgender seek "gender affirming treatment." And not all persons seeking that treatment choose to identify as transgender. This is a distinction without a difference as far as Plaintiffs' allegations are concerned, but it is material for the youth LCYC serves.

[8] Appendix I, ESSB 5599 at pp. 1 and 3.

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 8

RUIZ & SMART LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

to notify the parents of their child's whereabouts through the Department rather than directly. Appendix I, ESSB 5599 at 3:1-21 (amending RCW 13.32A.082(2)(c)). If the youth seeks gender-affirming or reproductive healthcare, the Department must "offer"—not compel or coerce—for the youth to connect to providers of appropriate behavioral health services. *Id*. at 3:15-19.

And the parents still receive the same notice they would otherwise have received if their child did not seek that healthcare. Regardless of whether the youth accepts or declines the Department's offer of that healthcare, their parents receive prompt notice of their whereabouts with the goal of reintegrating the child into the family unit. *See id*., ESSB 5599 at 3:20-21 and 8:10-13 ("the department *shall* make a good faith attempt to notify the parent") (emphasis added) and SHB 1406 at 3:36-4:4 (providing the Department "shall" offer family reconciliation services "to the youth *and* the family" "as soon as possible" following a shelter's report to the department that youth presented to the shelter with "compelling reasons" not to notify the parent) (emphasis added). That was the law before ESSB 5599. It remains the law post-amendment.

Under ESSB 5599, notice is now provided through the Department along with efforts at family reunification. *Id*. This promotes the State's and the children's interest in maintaining the integrity of the family unit by enabling the Department—which is better equipped than shelters to effect reunification— to work to reconcile the youth with their parents.

That is the long and the short of it. No parent is deprived of notice under ESSB 5599. It creates no requirement that youth receive gender- or reproductive-related healthcare. And it provides no mechanism for the State to take custody of a youth or curtail a parent's rights if they decline to recognize their child's preferred gender identity (the one and only mechanism for

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 9

RUIZ & SMART LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

accomplishing this solution of last resort remains a dependency petition, as discussed below). ESSB 5599 is about the manner of notice, not whether notice is given.

**D.      Neither SHB 1406 nor ESSB 5599 permit the State to obtain legal custody of youth or terminate parental rights.**

No provision of SHB 1406 or ESSB 5599 permit the State to terminate a parent's rights concerning or relationship with their child. These amendments take not one step down the long road to that outcome. That remains the sole province of the Juvenile Court Act, Chapter 13.34 RCW. Captioned "Dependency and Termination of Parent-Child Relationship," that Act provides the mechanism by which the State may take custody of youth.[9] And, while that mechanism is divorced from the changes SHB 1406 and ESSB 5599 accomplish and is not challenged in the FAC, it is notable that dependency contains numerous procedural safeguards and is founded on the State's recognition that "the family unit is a fundamental resource of American life [which] should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized." RCW 13.34.020.

**E.      The fears animating Plaintiffs' lawsuit are absent from the challenged legislation.**

Because the challenged amendments have nothing to do with terminating parental rights, concealing children's whereabouts from their parents, or compelling youth to seek gender-affirming healthcare, it is unsurprising that they have little correlation to the allegations of the First Amended Complaint (Dkt. No. 34; "FAC"). The following allegations are divorced from

---

[9] Furthermore, only the police can place a child in protective custody without a court order—and even then only to prevent "imminent physical harm to the child due to child abuse or neglect." RCW 26.44.050.

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 10

R‍uiz & S‍mart LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

the modest changes to youths' consent to remain in a shelter worked by SHB 1406 or to the change to the parental notice mechanism effected by ESSB 5599:

- Nothing about this legislation "prevents or delays notice to parents of runaway children" (FAC ¶ 3);
- Nothing requires the State to "promote 'gender transitions'" (although, like other healthcare, they may be offered to youth who request them and demonstrate medical necessity) (FAC ¶ 4);[10]
- Nothing "delays when parents can get their children back from the State's control (or, indeed, places the children under "the State's control" in the first instance) (FAC ¶ 5);
- Nothing "allows shelters and homes to keep children at locations without their parents' knowledge" (FAC ¶ 6);
- Nothing applies differently to "certain parents—but not all parents" (FAC ¶ 8);
- Nothing depends on with whether the parents of a transgender youth presenting at a shelter have refused "to 'affirm' a child's gender dysphoria" (FAC ¶ 81);
- Nothing removes the "time period for notifying parents" when their child presents to a shelter (FAC ¶ 84);

---

[10] The words "gender transition" are absent from the challenged amendments. Appendix I. More to the point: had the Legislature intended "appropriate behavioral health services" to mean "gender transition" as Plaintiffs misapprehend, it would have used the defined term "Protected health care services" rather than "appropriate behavioral health services," since "Protected health care services" explicitly includes "gender affirming treatment." Appendix I, ESSB 5599 at 3:8-10. "When the legislature uses two different terms in the same statute, courts presume the legislature intends the terms to have different meanings." *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007) (citations omitted).

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 11

Ruiz & Smart LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

- Nothing "penalizes" parents who refer to their children by particular pronouns (FAC ¶ 129); and

- Most fundamentally, nothing in the challenged amendments intersect with existing law permitting minors to obtain healthcare to "emancipate[] children from parental control" (FAC ¶ 109).

The bottom line is Washington State parents remain free to oppose their child's gender identity or desire for reproductive healthcare, urge them not to express their gender or seek that healthcare, or refuse to provide gender- or reproductive-related health care services. The challenged amendments serve only to reduce the likelihood that youth remain on the streets when conflicts over the foregoing cause a rift in the family that ejects the child from their home.

### IV.   ARGUMENT

**A.   A correct understanding of the challenged legislation confirms the Plaintiffs lack Article III standing.**

Stripped of the misapprehensions detailed above, the gist of Plaintiffs' FAC is their opposition to the State's making gender- and reproductive-related healthcare available to homeless youth. But Article III of our Constitution prevents the Plaintiffs from circumventing the democratic process by asking this Court to impose those policy preferences over the Legislature's efforts to protect homeless youth. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635, 643 (2016) (citing *Clapper v. Amnesty Int'l USA*, 568 U. S. 398, 408, 133 S. Ct. 1138, 1146, 185 L. Ed. 2d 264, 275 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576-77, 112 S. Ct. 2130, 2145, 119 L.Ed.2d 351, 374 (1992)). LCYC concurs in the

State's assertion[11] the Plaintiffs lack Article III standing because they cannot show the challenged legislation will harm them.

To show harm and thereby establish "injury in fact," the first and foremost element of the Supreme Court's test for Article III standing, Plaintiffs must plead that they have "personally . . . suffered some actual or threatened injury" that is "concrete and particularized," not "conjectural or hypothetical." *Id*., 578 U.S. at 338-39, 136 S. Ct. at 1547-48, 194 L.Ed.2d at 643-44 (citing *Steel Co. v. Citizens for Better Environment*, 523 U. S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998); *Lujan*, 504 U. S., at 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351). That means Plaintiffs must plead ESSB 1406 and ESSB 5599 hurt them "in a personal and individual way." *Id*., 578 U.S. at 339, 136 S. Ct. at 1548, 194 L.Ed.2d at 644 (collecting cases). That injury must "actually exist." *Id*., 578 U.S. at 340, 136 S. Ct. at 1548, 194 L.Ed.2d at 644 (citing Black's Law Dictionary 506 (10th ed. 2014). Correcting Plaintiffs' misunderstanding of the challenged legislation demonstrates it does not, as explained below.

**1. No Plaintiff alleges injury from SHB 1406's permitting youth to consent to shelter access when the parents cannot be reached or refuse to consent while simultaneously refusing to permit the child to return home.**

To establish injury in fact, Plaintiffs would have to plead they fall within the narrow loophole SHB 1406 closes. As detailed *infra*, § III.B, SHB 1406 allows youth to consent to stay in shelters when their parents cannot be reached or will not consent but refuse to permit the child to return home. This reduces the likelihood the State brings a dependency petition while increasing the likelihood that the youth has a safe place to stay while the family works toward reunification. Contrary to the implication Plaintiffs' allegations present, the challenged

---

[11] Motion to Dismiss, Dkt. No. 37 at 14-12.

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 13

RUIZ & SMART LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

amendments do not seek to estrange youth receiving gender- or reproductive-related healthcare services from their parents, but rather recognize the estrangement that disagreements about such fundamental matters as gender identity or reproductive rights can inflict on the family unit and put the Department in a position to heal the breach.

No Plaintiff alleges this harms them. The parent Plaintiffs speculate their children might run away from the family home. FAC ¶¶ 11-58. The organizational Plaintiffs oppose gender-affirming healthcare as a matter of policy preference. *Id.* ¶¶ 9 and 10.

But no Plaintiff alleges facts supporting a reasonable inference that, if their child were to run away and present to a shelter, either (a) the shelter would either be unable to contact them or (b) they would refuse consent for their child to remain in the shelter while also refusing to permit the child to return home. Without these allegations, the Plaintiffs simply do not fall within SHB 1406's narrow arc.

**2.    No Plaintiff alleges injury from ESSB 5599's parental notice mechanism.**

Plaintiffs' allegation ESSB 5599 harms them supposes a legal strawman the Court need not credit. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949, 173 L.Ed.2d at 884. Plaintiffs contend ESSB 5599 prevents the Department from notifying parents of a child presenting to a shelter if that child seeks gender-affirming care.[12] To the contrary, when a shelter or host home notifies the Department that a child seeking protected health care services has presented at a shelter, the Department must notify the parents and seek to accomplish family reunification "as soon as possible[.]" Appendix I, ESSB 5599 at 3:11-14 and SHB 1406 at 3:36-4:4.

---

[12] *See* FAC at ¶ 14 (pleading fear that child could run away and Plaintiffs "would be denied information on [her] whereabouts") and ¶¶ 84-100 (describing the challenged legislation's notice provisions)

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 14

RUIZ & SMART LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

Plaintiffs' suggestion the challenged amendments demolish this requirement, FAC ¶ 86, ignores the statute's plain language. Plaintiffs suggest the notice requirement is ambiguous when read in conjunction with the separate subsection requiring the Department to make appropriate behavioral health services available. *Id*. But the provision requiring offering behavioral health services says nothing of notice. Appendix I, ESSB 5599 at 3:18-19. And nothing about making medical treatment available to youth could be reasonably interpreted as an instruction to conceal that youth's whereabouts from their parents. *See State v. Evans,* 177 Wn.2d 186, 192, 298 P.3d 724, 727 (2013) (explaining statutes are ambiguous and subject to statutory construction only where amenable to multiple "reasonable" interpretations) (citations omitted).

Moreover, even were the foregoing provisions ambiguous, Plaintiffs plead—and the Court may rely on this allegation on a motion to dismiss—that the Department interprets the amendment to require parental notice even where the youth presenting to a shelter seeks protected healthcare services. FAC at ¶ 93 (pleading department implements SHB 5599 to require parental notification); Lovell Dec. Ex. A (Department guidance regarding notification); *Taylor v. Burlington N. R.R. Holdings, Inc.*, 193 Wn.2d 611, 627, 444 P.3d 606, 614 (2019) (citations omitted) (stating agency's interpretation of a statute it is charged with administering is highly persuasive); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (citations omitted) (ruling court may consider documents referred to in a complaint on a motion to dismiss).

Plaintiffs' attack on ESSB 5599 therefore boils down to an improper request that the Court "find ambiguity where none exists." *Arthur v. Wash. State Dep't of Soc. & Health Servs.*, 19 Wn. App. 542, 546, 576 P.2d 921, 924 (1978) (citing *Snohomish v. Joslin*, 9 Wn. App. 495, 513 P.2d 293 (1973)). The Court should decline to do so. Instead, the Court should follow the

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 15

RUIZ & SMART LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

cardinal principle that "[a] statute, of course, is to be construed, if such a construction is fairly possible, to avoid raising doubts of its constitutionality." *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 780, 101 S. Ct. 2142, 2147, 68 L.Ed.2d 612, 619 (1981).

### 3. ESSB 5599 terminates no one's parental rights.

The parent Plaintiffs allege fear that their opposition to free expression of gender identity as a matter of faith or social policy will cause the State to terminate their parental rights. *See* FAC at ¶¶ 20, 27, and 41. But this allegation fails to show they are harmed by SHB 1406 or ESSB 5599. These amendments impose no requirement that parents recognize a child's gender identity, use preferred pronouns, or take any other action as a precondition of the Department's seeking to reunite the family. Appendix I; *supra*, §III.E. Dependency and termination of parental rights remains subject to a separate set of legislation, RCW Ch. 13.34. *Supra*, § III. D. The challenged amendments leave those provisions intact. Fear of harm from a hypothetical dependency proceeding under RCW Ch. 13.34 cannot establish standing to challenge ESB 5599. *See Spokeo* 578 U.S. at 330, 136 S. Ct. at 1543, 194 L.Ed.2d at 639 (citation omitted) (an injury sufficient to confer Article III standing must be "fairly traceable to the challenged conduct of the defendant").

### B. Effecting the constitutional rights of youth overlooked by the Plaintiffs confirms SHB 1406 and ESSB 5599 pass Constitutional muster on the merits.

LCYC concurs with the State that the Plaintiffs' allegations trigger rational basis review because they fail to identify fundamental parental rights impacted by the challenged legislation. Dkt. No. 37 at 33:1-2. But LCYC asserts that, shorn of Plaintiffs' misapprehensions, both challenged items of legislation present compelling state interests that could withstand any level of scrutiny. *See Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 2268, 117 S. Ct.

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 16

RUIZ & SMART LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

2302, 2268, 138 L.Ed.2d 772, 788 (1997) (collecting cases) (explaining deprivation of a fundamental right protected by the Due Process Clause must be narrowly tailored to serve a compelling state interest).

    **1.    Parents have no Constitutional right to refuse to consent to the State sheltering their child while refusing to permit that child to return home.**

As explained *supra*, § IV.A.1, the only parents impacted by SHB 1406 are those who, if their child reported to a shelter, would either be beyond the reach of contact or, if contacted, would refuse consent for the child to remain at the shelter while simultaneously refusing to permit the child to return home. Even had Plaintiffs alleged this (they have not), LCYC is aware of no case finding a Constitutional interest protecting such conduct.

To the contrary, the State has a compelling interest in protecting at-risk youth from the risks of homelessness by permitting them to consent to shelter if the parents' consent is not forthcoming but the parents do not want the child returning home. As *parens patrie*, the State may intervene if a child's parents default in performing their custodial functions. *In re Gault*, 387 U.S. at 17, 87 S. Ct. at 1438, 18 L.Ed.2d at 540. The State "has an urgent interest in the welfare of the child." *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 2160, 68 L.Ed.2d 640, 650 (1981). Similarly, under the Washington State Constitution, "[i]t is well established that while parents have a fundamental liberty interest in the care and custody of their children, the State has an equally compelling *parens patriae* interest in protecting the physical, mental, and emotional health of children in this state." *H.B.H. v. State*, 192 Wn.2d 154, 163, 429 P.3d 484, 489 (2018) (citing *In re Dependency of Schermer*, 161 Wn.2d 927, 941, 169 P.3d 452 (2007)).

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 17

Ruiz & Smart LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

**2. Parents have no fundamental due process right to stop the State from offering their children medical care in a non-coercive manner.**

The Plaintiffs' opposition to ESSB 5599 boils down to a policy disagreement with the State's decision to make gender-affirming healthcare, if deemed medically necessary, available to youth who are at risk of homelessness. Besides failing to confer Article III standing, *supra* at § IV.A.2, this fails to demonstrate ESSB 5599 infringes on Plaintiffs' constitutional rights or lacks support by the State's interest as *parens patrie* to provide medical and psychological care to youth in its charge. *H.B.H.*, 192 Wn.2d at 163. LCYC therefore concurs in the State's apt explanation that ESSB 5599, regardless of any hypothetical intersection with RCW 71.34.520, aligns with the State's reasonable interests in protecting the health and safety of youth, supporting families, and preventing and reducing youth homelessness by improving youth and family access to services. Dkt. No. 37 at 26-26. Offering youth the option to accept or reject healthcare with no coercive element imposes no burden on Plaintiffs' parental liberties. *Id*. (citing *Anspach ex rel. Anspach v. City of Philadelphia, Dep't of Pub. Health*, 503 F.3d 256 (3d Cir. 2007) (other citations omitted). And any such infringement is more than outweighed by the State's interest in connecting the family and the estranged child to the Department to offer family reconciliation services.

## V.    CONCLUSION

The question how best to protect youth at risk of homelessness is undoubtedly a critical one. LCYC acknowledges the vital interest parents have in its resolution. That interest should find expression through the democratic process. The Court should leave the decision how best to combat youth homelessness in the hands of Washington State's elected representatives, find that the Plaintiffs lack Article III standing, and grant the State's Motion to Dismiss.

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 18

Ruiz & Smart LLP
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702

RESPECTFULLY SUBMITTED February 5, 2024.

**I certify this brief contains 5,149 words, in compliance with the Local Civil Rules.**

**RUIZ & SMART LLP**

By: *s/ McKean J. Evans*
Isaac Ruiz, WSBA #35237
iruiz@ruizandsmart.com
McKean J. Evans, WSBA #52750
mevans@plaintifflit.com

*Counsel for LCYC*

BRIEF OF *AMICUS* LCYC IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(No. 3:23-cv-05736-DGE) - 19

**Ruiz & Smart LLP**
901 Fifth Ave., Ste. 820
Seattle, WA 98164
Tel. 206-203-9100 Fax 206-785-1702